UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. **09-CV-60902-Ungaro-Simonton**

ALL FAMILY CLINIC OF DAYTONA BEACH, INC.
D/B/A FLORIDA MEDICAL ASSOCIATES,
on behalf of itself
and all others similarly situated

        Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

        Defendant.

_____/



FILED by _VT_ D.C.
ELECTRONIC

**June 18, 2009**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

## CLASS ACTION COMPLAINT

Plaintiff ALL FAMILY CLINIC OF DAYTONA BEACH, INC., D/B/A FLORIDA MEDICAL ASSOCIATES ("AFC"), on behalf of itself and all others similarly situated, files this class action complaint against the Defendant STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY ("STATE FARM") and alleges:

### I.  NATURE OF THE ACTION

1.     Florida's No Fault Law, Fla. Stat. § 627.736 ("§ 627.736"), was first enacted in 1971.  With the exception of a brief repeal of the statute from October 1, 2007 through December 31, 2007, Florida motor vehicle owners have been required to purchase this mandatory No Fault coverage that provides a statutorily required minimum amount of insurance for motor vehicle related damages.

2.     The No-Fault Law is a comprehensive statutory scheme, the purpose of which is to "provide for medical, surgical, funeral, and disability insurance benefits without regard to

fault, and to require motor vehicle insurance securing such benefits." Fla. Stat. § 627.731 (2006).

Underscoring Florida's PIP statute is the notion that in exchange for surrendering the right to sue

the at-fault party in tort for certain losses, the insured gains the right to swift, hassle-free

payment of his or her medical expenses regardless of fault.

3.      STATE FARM is in the business of selling insurance products, including Florida

No Fault Coverage, and commands the largest market share in the State of Florida.

## II.  JURISDICTION AND VENUE

4.      This Court has jurisdiction over the instant lawsuit pursuant to 28 U.S.C. §

1332(a)(1) as modified by the Class Action Fairness Act of 2005, because the plaintiff herein and

the defendants herein are citizens of different states, there are more than 100 members of the

class and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of attorneys'

fees, interest, and costs.

5.      Pursuant to 28 U.S.C. § 1391(b), venue is proper in this district because a

substantial part of the events or omissions giving rise to the claims occurred in this District.

## III. THE PARTIES

6.      AFC is a Florida corporation with its principal place of business in Daytona

Beach, Florida.

7.      STATE FARM is an Illinois corporation with its principal place of business

located in Bloomington, Illinois.  STATE FARM provides automobile insurance throughout the

State of Florida, is registered to do business in Florida, and transacts business in this District.

## IV.  ALLEGATIONS COMMON TO ALL COUNTS

8.      This is an action for declaratory relief and damages regarding STATE FARM's

systematic reduction and denial of reimbursement for MRI services through the utilization of the

2

Outpatient Prospective Payment System ("OPPS").

9.      At issue in this litigation is whether STATE FARM, under the existing Florida No

Fault law, may refuse or reduce reimbursement to Florida medical providers for MRI medical

services that are potentially not reimbursable for Medicare recipients due to the OPPS.

10.      STATE FARM's insurance policy is deemed to comply with the requirements of

§ 627.736 and provides the statutory minimum benefits.

11.      On January 1, 2008, Florida's No Fault Law was reenacted in an amended format.

Included in the amended No Fault law was § 627.736(5), which provided:

**(5) Charges for treatment of injured persons.--**

(a) 1. Any physician, hospital, clinic, or other person or institution lawfully
rendering treatment to an injured person for a bodily injury covered by personal
injury protection insurance may charge the insurer and injured party only a
reasonable amount pursuant to this section for the services and supplies rendered,
and the insurer providing such coverage may pay for such charges directly to such
person or institution lawfully rendering such treatment, if the insured receiving
such treatment or his or her guardian has countersigned the properly completed
invoice, bill, or claim form approved by the office upon which such charges are to
be paid for as having actually been rendered, to the best knowledge of the insured
or his or her guardian. In no event, however, may such a charge be in excess of
the amount the person or institution customarily charges for like services or
supplies. With respect to a determination of whether a charge for a particular
service, treatment, or otherwise is reasonable, consideration may be given to
evidence of usual and customary charges and payments accepted by the provider
involved in the dispute, and reimbursement levels in the community and various
federal and state medical fee schedules applicable to automobile and other
insurance coverages, and other information relevant to the reasonableness of the
reimbursement for the service, treatment, or supply.

2. The insurer may limit reimbursement to 80 percent of the following schedule of
maximum charges:

. . .

f. For all other medical services, supplies, and care, 200 percent of
the allowable amount under the participating physicians schedule
of Medicare Part B. However, if such services, supplies, or care is
not reimbursable under Medicare Part B, the insurer may limit
reimbursement to 80 percent of the maximum reimbursable

3

allowance under workers' compensation, as determined under s. 440.13 and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers' compensation is not required to be reimbursed by the insurer.

3. For purposes of subparagraph 2., the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect at the time the services, supplies, or care was rendered and for the area in which such services were rendered, except that it may not be less than the allowable amount under the participating physicians schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B.

4. Subparagraph 2. does not allow the insurer to apply any limitation on the number of treatments or other utilization limits that apply under Medicare or workers' compensation. An insurer that applies the allowable payment limitations of subparagraph 2. must reimburse a provider who lawfully provided care or treatment under the scope of his or her license, regardless of whether such provider would be entitled to reimbursement under Medicare due to restrictions or limitations on the types or discipline of health care providers who may be reimbursed for particular procedures or procedure codes.

12.     In 2008, the legislature amended § 627.736(5)(a)(2)(f) and (a)(3) to clarify that

the "participating fee schedule" of Medicare Part B is the proper schedule to be used. *See*, Ch.

2008, 220, Laws of Fla. (2008). *See*, Florida Senate's House Message Summary dated May 1,

2008. As amended, § 627.736(5) states:

(5) CHARGES FOR TREATMENT OF INJURED PERSONS.-

[(a)2.]f. For all other medical services, supplies, and care, 200 percent of the allowable amount under the participating physicians schedule of applicable Medicare Part B fee schedule. However, if such services, supplies, or care are not reimbursable under Medicare Part B, the insurer may limit reimbursement to 80 percent of the maximum reimbursable allowance under workers' compensation, as determined under s. 440.13 and rules adopted thereunder which are in effect at the time such services, supplies, or care are provided. Services, supplies, or care that are not reimbursable under Medicare or workers' compensation are not required to be reimbursed by the insurer.

3. For purposes of subparagraph 2., the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect at the time the services, supplies, or care were rendered and for the area in which such services were rendered, except that it may not be less than the allowable amount

4

under the participating physicians schedule ~~applicable  2007~~ Medicare Part B <u>for 2007</u> ~~fee schedule~~ for medical services, supplies, and care subject to Medicare Part B.

Ch. 2008-220, Laws of Fla. (2008)(changes in original).

13.     The amendment clarifies that PIP reimbursement for medical services would be based on 200 percent of the "allowable amount under the 'participating physicians' schedule of Medicare Part B for 2007."

14.     § 627.736(5)(a)(4) further limits a PIP insurer's ability to rely on Medicare for any purpose other than using "the allowable amount under the participating physicians schedule of Medicare Part B" as a baseline reimbursement level. § 627.736(5)(a)(4) states:

(5) CHARGES FOR TREATMENT OF INJURED PERSON.-

(a) . . . 4. Subparagraph 2. does not allow the insurer to apply any limitation on the number of treatments or other utilization limits that apply under Medicare or workers' compensation.   An insurer that applies the allowable payment limitations of subparagraph 2. must reimburse a provider who lawfully provided care or treatment under the scope of his or her license, regardless of whether such provider would be entitled to reimbursement under Medicare due to restrictions or limitations on the types or discipline of health care providers who may be reimbursed for particular procedures or procedure codes.

15.     Under § 627.735(5)(a), the allowable amount under the participating physicians schedule of Medicare Part B sets the baseline value of MRI services which must be reimbursed by PIP insurers to MRI facilities in Florida, and Medicare Part B for 2007 must be used when the Medicare fee schedule in effect at the time the MRI services are rendered is "less than the allowable amount under the participating physicians schedule Medicare Part B for 2007."

16.     The "participating physicians" schedule of Medicare Part B is the proper schedule under Medicare Part B.

17.     The minimum reimbursement a PIP insurer must pay an MRI provider is 200% of the participating physicians schedule Medicare Part B for 2007.   § 627.735(5)(a)(4) further

5

prohibits a PIP insurer from applying any other Medicare limitations, "regardless of whether such provider would be entitled to reimbursement under Medicare."

18.    AFC provides MRI services to patients involved in motor vehicle accidents and that are covered under No Fault policies with STATE FARM.

19.    On January 31, 2008, James Read ("Read"), a STATE FARM policyholder,[1] was involved in a motor vehicle accident and sustained injuries.  As a result of these injuries, Read sought medical care and attention from AFC.

20.    On March 6, 2008 AFC performed an MRI on Read and utilized CPT code 72148 to describe the services on its billing submitted to STATE FARM.  Pursuant to the § 627.736, State Farm was required to pay 200% of the Medicare Part B Fee Schedule.  Thus, the MRI services performed by AFC for Read should have been reimbursed at $1066.28.

21.    Rather than reimbursing for the MRI service at 200% of the Medicare Part B fee schedule, STATE FARM reduced payment of the MRI services performed on March 6, 2008, by $260.90 stating:

> Effective January 1, 2007, the payment amount for the technical portion has been capped at the Outpatient Prospective Payment System (OPPS) amount.

> (Exhibit 2)

22.    STATE FARM has improperly applied the Medicare "OPPS" reduction to the MRI services provided to its insureds by AFC.

## V.  CLASS ACTION ALLEGATIONS

23.    AFC brings this action pursuant to Federal Rule of Civil Procedure 23, on behalf of a class of all other persons and entities similarly situated.  The class is defined to include:

> Florida Health care providers whose bills for MRI services rendered to State Farm insureds were reduced or not paid based on the Outpatient Prospective Payment

---

[1] A copy of the policy of insurance is attached as Exhibit 1.

System.

24.     There are questions of law and fact that are common to all members of the class, which questions predominate over any question affecting only individual class members.

25.     The principal common issues include the following:

    a.     whether STATE FARM breached its contract payment requirements by reducing payouts based on the OPPS.

    b.     whether STATE FARM violated § 627.736 by reducing payouts based on the OPPS.

26.     The class is comprised of all providers who provided services to STATE FARM Florida insureds, whose MRI bills were reduced or not paid based on the OPPS.

27.     The amount of the claim for each bill, adjusted amount, amount paid under the Policy and the OPPS adjustments are all maintained in STATE FARM's computer system and are easily obtainable.

28.     AFC's claims are typical of the claims of all members of the class because the claims are based on the same legal and remedial theories.

29.     AFC will fairly and adequately protect the interests of all class members in the prosecution of this action and in the administration of all matters relating to the claims stated herein.

30.     AFC is similarly situated with, and has suffered similar injuries as the members of the class that it seeks to represent.

31.     AFC has retained counsel experienced in class action cases and insurance coverage litigation.

32.     Neither AFC, nor counsel, have any interest that may cause them to not

7

vigorously pursue this action.

33.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, because:

a.    the individual class members are not all aware that they have been wronged and are thus unable to prosecute individual actions;

b.    concentration of the litigation concerning this matter in this Court is desirable;

c.    the claims of the representative Plaintiff are typical of the claims of the members of the class;

d.    a failure of justice will result from the absence of a class action; and the class and the difficulties likely to be encountered in the management of this class action are not great.

34.    The class is so numerous as to make it impracticable to join all members of the class as plaintiffs.

35.    Many class members may not even be aware of STATE FARM's improper reimbursement and since the damages amount for each claim is relatively small, it would not be practicable to justify the expense of pursuing individual litigation.  In contrast, on a class-wide basis, STATE FARM has saved millions of dollars by improperly paying providers.

**COUNT I**
**(Breach of Contract)**

36.    AFC repeats and realleges Paragraphs 1 through 35 of this Complaint.

37.    STATE FARM reduced payment for the MRI services for procedure code 72148 performed on March 6, 2008 in the total amount of $260.90.  (Exhibit 2)

38.    STATE FARM has denied the reasonable charge for services rendered, failed and

8

refused to pay for services rendered by AFC to Read for injuries sustained as a result of a motor vehicle accident even though STATE FARM had notice of the claim and demand for payment of the charges for more than thirty (30) days, and has failed to make payment for those charges and for interest due pursuant to the Florida No Fault Act and the policy of insurance.

39.    STATE FARM was provided with the requisite demand letter in compliance with § 627.736(10) and the policy of insurance (Exhibit 3). STATE FARM did not provide AFC with the benefits requested in the demand letter pursuant to § 627.736(10) and the policy of insurance and denied AFC's claim (Exhibit 4).

40.    AFC asserts that all the aforementioned bills were reasonably and necessarily incurred for treatment for the injuries as a result of the motor vehicle accident of January 31, 2008, and that AFC has suffered damages in the amount of the reduced medical bills.

41.    STATE FARM breached the contract by improperly reducing payments.

42.    As a result of the breach, AFC has been damaged.

43.    All conditions precedent have occurred or have been waived.

44.    Due to STATE FARM's refusal/failure to timely pay benefits, AFC has been forced to retain the services of the undersigned counsel and has agreed to pay reasonable attorneys' fees and costs.

45.    Due to STATE FARM's failure to make timely payment of benefits, AFC is entitled to reasonable attorneys fees, legal assistant fees and costs pursuant to §§ 627.736(7), 627.428, 57.104 and 57.041 and all other applicable statutes.

### COUNT II
### (Declaratory Judgment)

46.    AFC repeats and realleges paragraphs 1 through 35 of this Complaint.

47.    STATE FARM contends that it is allowed to apply the OPPS reduction to the

9

required reimbursement for MRI services performed on Read.

48.    STATE FARM further contends that the insured is not required to make any additional payment for the MRI services performed on March 6, 2008. (Exhibit 4)

49.    AFC is in doubt as to its rights under the policy of insurance and § 627.736(5) due to STATE FARM's contention that the MRI services performed on March 6, 2008, are reduced by the OPPS pursuant to § 627.736.

50.    AFC maintains that the MRI services performed on March 6, 2008, are compensable at the full 200% of Medical Part B and that STATE FARM cannot utilize the "OPPS" to deny or reduce payment.

51.    AFC is in doubt as to whether STATE FARM has improperly reduced payment for MRI services performed on March 6, 2008 to STATE FARM's insured.

52.    AFC is in doubt regarding its rights under the policy of insurance and § 627.736(5) as it relates to STATE FARM's contention that it may reduce payment of the MRI services performed by AFC pursuant to the OPPS.

53.    There is a bona fide dispute between the parties and AFC has and does raise justiciable issues as to the existence or non-existence of its rights, powers, obligations and legal relations with STATE FARM by virtue of the contract, the complaint and the applicable statutes of this state.

54.    AFC is in doubt as to its rights, powers, obligations, and legal relations and there is an actual and present need for a Declaratory Judgment as to the issues set forth herein.

55.    AFC has retained the undersigned counsel to act on its behalf in this Declaratory Action and has agreed to accept any court awarded fee.

56.    AFC seeks and is entitled to an award of reasonable attorney's fees and costs for

the necessity of bringing this action pursuant to § 627.736 and § 627.428.

WHEREFORE, Plaintiff ALL FAMILY CLINIC OF DAYTONA BEACH, INC. D/B/A FLORIDA MEDICAL ASSOCIATES demands judgment against Defendant STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY for all personal injury benefits to which Plaintiff AFC is entitled, requests a declaration of its rights as delineated herein requests that this matter be certified as a class action, requests judgment for costs, interest and attorney fees for prosecution of this suit together with legal assistant fees and costs pursuant to §§ 627.736(8), 627.428, 57.104 and 57.041 and all other applicable statutes, with pre-judgment and post-judgment interest and any other relief which this Honorable Court may award.

ERIC LEE (Bar No.: 961299)
Lee@leeamlaw.com
Lee & Amtzis, P.L.
5550 Glades Road, Suite 401
Boca Raton, FL  33431
Telephone:  (561) 981-9988
Facsimile:  (561) 981-9980

KIMBERLY P. SIMOES (Bar No.:  0109479)
Susan W. Tolbert, P.L.
Post Office Box 2222
Daytona Beach, FL  32115
Telephone:  (386) 248-0909

**Attorneys for Plaintiff AFC**

11

**State Farm®**
Providing Insurance and Financial Services
Home Office, Bloomington, Illinois 61710



REC'D NOV 12 2008

November 6, 2008

Susan W. Tolbert
148 South Ridgewood Ave
Daytona Beach, FL 32114

**Florida PIP Office**
P.O. BOX 9608
WINTER HAVEN, FL 33883

RE:  Claim Number:   59-Z880-592
     Date of Loss:    1/31/2008
     Our Insured:     READ, JAMES P & CHERYL C
     Your Client:     ALL FAMILY CLINIC OF DAYTONA BEACH, INC DBA FLORIDA
MEDICAL

Dear Susan W. Tolbert:

In response to your request, pursuant to Florida Statute 627.4137, please see the information below and attached.

Policy number 8088-434-59, covering a 2008 FORD EXPED EL, VIN 1FMFK19558LA10893, was issued to READ, JAMES P & CHERYL C, and was in effect on the accident date of 1/31/2008. The name of the insurer, the insured(s), and the liability coverage limits for this policy on that date were as follows:

a.   The name of the insurer: State Farm Mutual Automobile Insurance Company

b.   The name of each insured for liability coverage in accordance with policy definitions:

     Named Insured(s): READ, JAMES P & CHERYL C
     Other insured(s) as defined in this policy: NONE

c.   Liability Coverage:

     A – Bodily Injury Liability $100,000 each person/$300,000 Each Accident.
     B – Property Damage Liability $50,000 Each Accident.

d.   Liability Policy or coverage defense reasonably believed to be applicable at the time of this statement: NONE

Umbrella or excess insurance known to the Company at this time:

None.

A copy of the above State Farm® policy(ies) issued to READ, JAMES P & CHERYL C, in effect on the date of loss is attached hereto.

59-Z880-592
Page 2
November 6, 2008

Please advise if you have any questions or concerns about this information. The claim
representative assigned to this matter is Kila Murphy x 87106 and may be contacted at (866)
537-2716.

Under penalties of perjury, I declare that I have read the foregoing document and attachments
and the information stated therein is true and correct.

Sincerely,

James Gilder
Team Manager

State Farm Mutual Automobile Insurance Company

Enclosure:     A copy of the policy with the applicable endorsements is enclosed.

**State Farm Mutual Automobile Insurance Company**
7401 Cypress Gardens Boulevard
Winter Haven FL 33888

SP056-2-G        MUTL   VOL

| DECLARATIONS PAGE |
| --- |

NAMED INSURED        59-6566-22SG

READ, JAMES P & CHERYL C
244 ANGELES RD
DE BARY FL 32713-3526

| POLICY NUMBER   808 8434-E24-59N |
| --- |
| POLICY PERIOD JAN 01 2008 to MAY 24 2008 |

AGENT
MILCE SNYDER
1810 N SEMORAN BLVD
STE 100
WINTER PARK, FL 32792-2238

PHONE: (407)678-3443

**DO NOT PAY PREMIUMS SHOWN ON THIS PAGE.**
**SEPARATE STATEMENT ENCLOSED IF AMOUNT DUE.**

| YEAR | MAKE | MODEL | BODY TYPE | VEHICLE ID NUMBER | CLASS |
| --- | --- | --- | --- | --- | --- |
| 2008 | FORD | EXPED EL | SPORT WG | 1FMFK19558LA10893 | 6D3H50H000 |

| SYMBOLS | COVERAGES | PREMIUMS 2008 FORD |
| --- | --- | --- |
| | See policy for coverage details. | |
| A | Bodily Injury/Property Damage Liability | $85.66 |
| | Limits of Liability-Coverage A-Bodily Injury | |
| | Each Person, Each Accident | |
| | $100,000     $300,000 | |
| | Limits of Liability-Coverage A-Property Damage | |
| | Each Accident | |
| | $50,000 | |
| P10 | No Fault | $25.99 |
| C | Medical Payments | $14.40 |
| | Limit of Liability-Coverage C | |
| | Each Person | |
| | $10,000 | |
| D100 | $100 Deductible Comprehensive | $12.29 |
| G250 | $250 Deductible Collision | $70.01 |
| H | Emergency Road Service | $1.39 |
| R1 | Car Rental/Travel Expenses | $9.53 |
| | Limits of Liability-Car Rental Expenses | |
| | Each Day       Each Occurrence | |
| | 80%       $1,000 | |
| U3 | Nonstacking Uninsured Motor Vehicle | $52.24 |
| | Limits of Liability-U3 | |
| | Each Person,  Each Accident | |
| | $100,000     $300,000 | |

Total premium for this policy period JAN 01 2008 to MAY 24 2008        $284.57   This is not a bill.

| IMPORTANT MESSAGES |
| --- |

Your policy will be assessed 1% due to the Florida Hurricane Catastrophe Fund Assessment.

Your policy consists of this declarations page, the policy booklet - form 9810.7, and any endorsements that apply, including those issued to you with any subsequent renewal notice.

Replaced policy number 8088434-59M.

**Your total current 6 month premium for NOV 24 2007 to MAY 24 2008 is $358.51.**

For questions, problems or to obtain information about coverage call: (407)678-3443.

| EXCEPTIONS AND ENDORSEMENTS (See individual endorsement for details.) |
| --- |

```
FINANCED- FORD MOTOR CREDIT - LIEN INSURANCE SERVICE CENTER, PO BOX 390910,
MINNEAPOLIS MN 55439-0910.
6091      CERTIFICATE OF GUARANTEED RENEWAL.
6127HH    AMENDATORY ENDORSEMENT.
6893MM    AMENDMENT OF CAR RENTAL AND TRAVEL EXPENSES COVERAGES.
6910.3    AMENDMENT OF DEFINED WORDS; INSURED'S DUTIES; LIABILITY
          NO-FAULT, MEDICAL PAYMENTS; UNINSURED MOTOR VEHICLE & PHYSICAL
          DAMAGE COVERAGES; & CONDITIONS.
```

Agent:        MILCE SNYDER
Telephone: (407)678-3443
Prepared   NOV 29 2007        6566-352

R

PLEASE ATTACH TO YOUR POLICY BOOKLET

Policy Number: 808 8434-I24-59N
Sheet 1 of 2

## CERTIFICATE OF GUARANTEED RENEWAL
### 6091 Amendment of Cancellation and Renewal Conditions

This endorsement is a part of *your* policy. Except for the changes it makes, all other terms of the policy remain the same and apply to this endorsement. It is effective at the same time as *your* policy unless a different effective date is shown for the endorsement on the Declarations Page.

This endorsement is issued by the STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY of Bloomington, Illinois.

We agree that we will not cancel or non-renew this policy as long as:

1. this policy insures a *private passenger car*;
2. premiums are paid when due;
3. all drivers of *your car* maintain valid drivers licenses;
4. *you* continue to reside in an area in which State Farm Mutual Automobile Insurance Company sells automobile insurance and has the Certificate of Guaranteed Renewal available for use; and
5. no *person* other than the current named insured or that *person's spouse* becomes a named insured on this policy.

*You* will be able to select from those coverages which continue to be available from State Farm Mutual Automobile Insurance Company. Coverage will be provided by our car policy, including any revisions that may be made to it.

*Edward B. Rust Jr.*
Chief Executive Officer

Page 1 of 1                                          6091

## 6127HH AMENDATORY ENDORSEMENT

This endorsement is a part of *your* policy. Except for the changes it makes, all other terms of the policy remain the same and apply to this endorsement. It is effective at the same time as *your* policy unless a different effective date is specified by us in writing.

In consideration of the premium charged, it is agreed that *your* policy is changed as follows:

1. **DEFINED WORDS**
   a. The definition of *Newly Acquired Car* is changed to read:

   *Newly Acquired Car* means a *car* newly owned by or newly leased to *you* or *your spouse*. A *car* ceases to be a *newly acquired car* on the earlier of:

   1. the effective date and time of a policy, including any binder, issued by us or any other company that describes the *car* as an insured vehicle; or
   2. the end of the 14th calendar day immediately following the date the *car* is delivered to *you* or *your spouse*.

   If *you* or *your spouse* want coverage for a *car* newly owned by or newly leased to *you* or *your spouse* after that *car* ceases to be a *newly acquired car* and it:

   1. replaces *your car*, then *you* must ask us to insure that *car* within 14 days after it is delivered to *you* or *your spouse* and pay us any added amount due. The added amount due will be calculated based on the date the replacement *car* is delivered to *you* or *your spouse*.
   2. does not replace *your car*, then *you* or *your spouse* must apply to us for a separate policy to insure that added *car*. Such policy will be issued only if both the applicant and the vehicle are eligible for coverage at the time of the application.

   If a *newly acquired car* is not otherwise afforded comprehensive coverage or collision coverage by this or any other policy, then this policy will provide Comprehensive Coverage or Collision Coverage for that *newly acquired car*, subject to a deductible of $500. Any coverage provided as a result of this paragraph will apply only

   until the end of the 5th calendar day immediately following the date the *newly acquired car* is delivered to *you* or *your spouse*.

   b. The definition of *Your Car* is changed to read:

   *Your Car* means the vehicle described on the Declarations Page. *Your Car* does not include a vehicle that *you* no longer own or lease.

   If *you* ask us to replace the *car* shown on the Declarations Page with a *car* newly owned by or newly leased to *you* or *your spouse*, the *car* being replaced will continue to be considered *your car* until the earliest of:

   1. the end of the 30th calendar day immediately following the date such newly owned or newly leased *car* is delivered to *you* or *your spouse*;
   2. the date this policy is no longer in force; or
   3. the date *you* no longer own or lease the *car* being replaced.

2. **REPORTING A CLAIM — INSURED'S DUTIES**

   The following is added:

   A *person* or organization making claim under this policy must give us proof of loss on forms we furnish.

   A *person* making claim under No-Fault Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, or Death, Dismemberment and Loss of Sight Coverage must provide written authorization for us to obtain:

   1. medical bills;
   2. medical records;
   3. wage, salary and employment information; and
   4. any other information we deem necessary to substantiate the claim.

Page 1 of 2                                          6127HH

1994.03.00.02

PLEASE ATTACH TO YOUR POLICY BOOKLET

Policy number: 808-84-14-L24-59N

If an injured *person* is a minor, unable to act, or dead, then his or her legal representative must provide us with the written authorization.

If the holder of the information refuses to provide it to us despite the authorization, then at our request the *person* making claim or his or her legal representative must obtain the information and promptly provide it to us.

3. **SECTION II – NO-FAULT – COVERAGE P**

The provision titled Disputes Regarding Charges For Treatment of Injured Persons is deleted.

4. **SECTION III — UNINSURED MOTOR VEHICLE — COVERAGES U and U3**

The following is added to Deciding Fault and Amount – Coverages U and U3:

Arbitrators shall have no authority to decide any questions of law or conduct arbitration on a class-wide or class-representative basis.

5. **SECTION IV — PHYSICAL DAMAGE COVERAGES**

a. **COLLISION – 80% – COVERAGE F and COLLISION – COVERAGE G**

The following language is added:

If we offer to pay for the repair of damaged windshield glass instead of the replacement of the windshield and *you* agree to have such repair made, we will pay the full cost of repairing the windshield glass regardless of *your* deductible.

b. **COMPREHENSIVE – COVERAGE D, COLLISION – 80% – COVERAGE F and COLLISION – COVERAGE G**

The following is added:

If *you* and we agree, windshield glass will be repaired instead of replaced.

*You* agree that replacement glass need not have any insignia, logo, trademark, etching, or other marking that was on the replaced glass.

6. **MOTORCYCLE COVERAGE ENDORSEMENT and TRAILER ENDORSEMENT**

The definition of *newly acquired car* in the above item 1 replaces the definition of *newly acquired car* in both the MOTOR-CYCLE COVERAGE endorsement and the TRAILER ENDORSEMENT if either endorsement is a part of *your* policy. In addition, under the TRAILER ENDORSEMENT, "*car*" as found in the definition of *newly acquired car* is changed to include a trailer *you* own or by a newly leased to *you* if it is of the same type as the trailer described on the declarations page.

**6893MM AMENDMENT OF CAR RENTAL AND TRAVEL EXPENSES COVERAGES**

This endorsement is a part of *your* policy. Except for the changes it makes, all other terms of the policy remain the same and apply to this endorsement. It is effective at the same time as *your* policy unless a different effective date is specified by us in writing.

In consideration of the premium charged, it is agreed that **SECTION IV — PHYSICAL DAMAGE COVERAGES** of *your* policy is changed as follows:

**CAR RENTAL AND TRAVEL EXPENSES — COVERAGE R1 and CAR RENTAL AND TRAVEL EXPENSES — COVERAGE R2** are deleted and replaced by the following:

**CAR RENTAL AND TRAVEL EXPENSES – COVERAGE R1.** *You* have this coverage if "R1" appears in the "Coverages" space on the declarations page.

1. Car Rental Expense.

a. If:

(1) a dollar amount is shown under "Limits of Liability – Car Rental Expense, Each Day" on the declarations page, we will pay *you* the daily rental charge up to that dollar amount; or

(2) a percentage amount is shown under "Limits of Liability – Car Rental Expense, Each Day" on the declarations page, we will pay *you* that percentage of the daily rental charge

when *you* rent a *car* from a car rental agency or *car business*. "Daily rental charge" means the daily rental rate plus charges for mileage and related taxes.

If *you* choose not to rent a *car*, we will pay *you* $10 for each complete 24 hour period that *your car* is not drivable. *You* must report to us the period of time that *your car* was not drivable.

We will pay only if *your car* is not drivable because of a *loss* which would be payable under coverage D, F or G.

b. Payment will be made for a period that:

(1) starts:

(a) when *your car* is not drivable due to the *loss*; or

(b) if *your car* is drivable, when *you* leave it at the shop for agreed repairs; and

(2) ends:

(a) when *your car* has been repaired or replaced; or

(b) when we offer to pay for the *loss*, if *your car* is repairable but *you* choose to delay repairs; or

(c) five days after we offer to pay for the *loss* if:

(i) *your car* was stolen and not recovered; or

(ii) we declare that *your car* is a total loss;

whichever comes first.

If the incurred daily rental charge is payable under both Comprehensive Coverage and Car Rental and Travel Expenses Coverage, we will pay only under the one coverage where *you* collect the most.

PLEASE ATTACH TO YOUR POLICY BOOKLET

Policy Number: 808 8434-L24-59N
Sheet 2 of 2

2. **Travel Expenses.** If *your car* is not drivable due to a *loss* which occurs more than 50 miles from home and which would be payable under coverage D, F or G, we will pay *you* for expenses incurred by *you, your spouse* and any *relative* for:

   a. commercial transportation fares to continue to *your* destination or home;

   b. extra meals and lodging needed when the *loss* to *your car* causes a delay enroute. The expenses must be incurred between the time of the *loss* and *your* arrival at *your* destination or home or by the end of the fifth day, whichever occurs first; and

   c. meals, lodging and commercial transportation fares incurred by *you* or a *person you* choose to drive *your car* from the place of repair to *your* destination or home.

3. **Rental Car – Repayment of Deductible Amount Expense.** We will pay the expense of any deductible amount *you* are required to pay the owner under comprehensive or collision coverage in effect on a substitute *car* rented from a car rental agency or car business.

**Total Amount of Expenses Payable – Coverage R1**

1. The most we will pay for "Car Rental Expense" incurred in any one occurrence is shown on the declarations page under "Limits of Liability    Car Rental Expense, Each Occurrence".

2. The most we will pay for "Travel Expenses" incurred by all *persons* in any one occurrence is $400.

3. The most we will pay for "Rental Car Repayment of Deductible Amount Expense" incurred in any one occurrence is $400.

*Edward B Rust, Jr*
Chief Executive Officer

2                              6893MM

PLEASE READ YOUR POLICY CAREFULLY. IF YOU HAVE AN ACCIDENT, CONTACT YOUR STATE FARM AGENT OR ONE OF OUR CLAIM OFFICES AT ONCE.   (SEE "REPORTING A CLAIM-INSURED'S DUTIES" IN THIS POLICY.)

Authorized Representative

State Farm Mutual Automobile Insurance Company, Home Office, Bloomington, Illinois

Florida Office   •   7401 Cypress Gardens Boulevard   •   Winter Haven, Florida 33888-0007

# YOUR
# STATE FARM
## CAR
## POLICY

Florida
Policy Form 9810.7

2
8107

## STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
## BLOOMINGTON, ILLINOIS
### A MUTUAL COMPANY

### DEFINED WORDS
### WHICH ARE USED IN SEVERAL PARTS OF THE POLICY

We define some words to shorten the policy. This makes it easier to read and understand. Defined words are printed in boldface italics. *You* can pick them out easily.

*Bodily Injury* – means bodily injury to a *person* and sickness, disease or death which results from it.

*Car* – means a land motor vehicle with four or more wheels, which is designed for use mainly on public roads. It does not include:

1. any vehicle while located for use as a dwelling or other premises; or

2. a truck-tractor designed to pull a trailer or semitrailer.

*Car Business* – means a business or job where the purpose is to sell, lease, repair, service, transport, store or park land motor vehicles or trailers.

*Insured* – means the *person, persons* or organization defined as *insureds* in the specific coverage. If the information *you* have provided State Farm is incorrect or incomplete, or changes during the policy period, State Farm may decrease or increase the premium during the policy period as set out in the provision titled **Premium** of the Conditions section of this policy.

*Loss* – defined in Sections IV and V.

*Newly Acquired Car* – means a *replacement car* or an *additional car.*

   *Replacement Car* – means a *car* purchased by or leased to *you* or *your spouse* to replace *your car.* This policy will only provide coverage for the *replacement car* if *you* or *your spouse*:

   1. tell us about it within 30 days after its delivery to *you* or *your spouse*; and

   2. pay us any added amount due.

   *Additional Car* – means an added *car* purchased by or leased to *you* or *your spouse.* This policy will only provide coverage for the *additional car* if:

   1. it is a *private passenger car* and we insure all other *private passenger cars*; or

   2. it is other than a *private passenger car* and we insure all *cars*

owned by *you* or *your spouse* on the date of its delivery to *you* or *your spouse.*

This policy provides coverage for the *additional car* only until the earlier of:

   1. 12:01 A.M. on the 31st day after the delivery of the *car* to *you* or *your spouse*; or

   2. the effective date and time of a policy issued by us or any other company that describes the *car* on its declarations page.

*You* or *your spouse* may apply for a policy that will provide coverage beyond the 30th day for the *additional car.* Such policy will be issued only if both *you* and the vehicle are eligible for coverage at the time of application.

If a *newly acquired car* is not otherwise afforded comprehensive or collision coverage by this or any other policy, this policy will provide the comprehensive or collision coverage not otherwise provided for the *newly acquired car.* If such coverage is provided by this paragraph, it will apply only until 12:01 A.M. Standard Time at the address shown on the declarations page on the sixth day after the delivery of the *car* to *you* or *your spouse.* Any comprehensive or collision coverage provided by this paragraph is subject to a deductible of $500.

*Non-Owned Car* – means a *car* not owned, registered or leased by:

   1. *you, your spouse*;

   2. any *relative* unless the *car* meets the requirements described below;

   3. any other *person* residing in the same household as *you, your spouse* or any *relative*; or

   4. an employer of *you, your spouse* or any *relative.*

A *car* owned, registered or leased by a *relative* is considered a *non-owned car* if, at the time of the accident or *loss*, the *car* has been insured for liability

3
8107

coverage within the last 30 days and is driven by an *insured* who does not own or lease the *car*.

*Non-owned car* does not include a:

1. rented *car* while it is used in connection with the *insured's* employment or business; or
2. *car* which has been operated or rented by or in the possession of an *insured* during any part of each of the last 21 or more consecutive days. If the *insured* is an *insured* under one or more other car policies issued by us, the 21 day limit is increased by an additional 21 days for each such additional policy.

A *non-owned car* must be a *car* in the lawful possession of the *person* operating it.

*Occupying* – means in, on, entering or alighting from.

*Person* – means a human being.

*Private Passenger Car* – means a *car*:

1. with four wheels;
2. of the private passenger or station wagon type; and
3. designed solely to carry *persons* and their luggage.

*Relative* – as used in Sections I, III, IV and V means a *person* related to *you* or *your spouse* by blood, marriage or adoption (including a ward or foster child) who resides primarily with *you*. It includes *your* unmarried and unemancipated child away at school.

As used in Section II, *relative* means a relative of any degree by blood or by marriage who usually makes his home in the same family unit, whether or not temporarily living elsewhere.

*Spouse* – means *your* husband or wife who resides primarily with *you*.

*Temporary Substitute Car* – means a *car* not owned by *you* or *your spouse*, if it replaces *your car* for a short time. Its use has to be with the consent of the owner. *Your car* has to be out of use due to its breakdown, repair, servicing, damage or *loss*. A *temporary substitute car* is not considered a *non-owned car*.

*Utility Vehicle* – means a motor vehicle with:

1. a pickup, panel or van body; and
2. a Gross Vehicle Weight of 10,000 pounds or less.

*You* or *Your* – means the named insured or named insureds shown on the declarations page.

*Your Car* – means the *car* or the vehicle described on the declarations page.

## DECLARATIONS CONTINUED

We, the State Farm Mutual Automobile Insurance Company, agree to insure *you* according to the terms of this policy based:

1. on *your* payment of premium for the coverages *you* chose; and
2. in reliance on *your* statements in these declarations.

*You* agree, by acceptance of this policy that:

1. the statements in these declarations are *your* statements and are true; and
2. we insure *you* on the basis *your* statements are true; and
3. this policy contains all of the agreements between *you* and us or any of our agents.

Unless otherwise stated in the exceptions space on the declarations page, *your* statements are:

1. Ownership. *You* are the sole owner of *your car*.
2. Insurance and License History. Neither *you* nor any member of *your* household within the past 3 years has had:
   a. vehicle insurance canceled by an insurer; or
   b. a license to drive or vehicle registration suspended, revoked or refused.
3. Use. *Your car* is used for pleasure and business.

4

8107

# WHEN AND WHERE COVERAGE APPLIES

### When Coverage Applies

The coverages *you* chose apply to accidents and *losses* that take place during the policy period.

The policy period is shown under "Policy Period" on the declarations page and is for successive periods of six months each for which *you* pay the renewal premium. Payments must be made on or before the end of the current policy period. The policy period begins and ends at 12:01 A.M. Standard Time at the address shown on the declarations page.

### Where Coverage Applies

1.  The liability, medical payments, uninsured motor vehicle and physical damage coverages *you* chose apply:

    a.  in the United States of America, its territories and possessions or Canada; or

    b.  while the insured vehicle is being shipped between their ports.

The liability, medical payments and physical damage coverages also apply in Mexico within 50 miles of the United States border. A physical damage coverage *loss* in Mexico is determined on the basis of cost at the nearest United States point.

2.  The no-fault coverage *you* chose applies:

    a.  in Florida, and

    b.  outside Florida, but:

        (1) within the United States of America, its territories or possessions or Canada, or

        (2) in Mexico within 50 miles of the United States border

        to *you* or a *relative*, while *occupying your car*, a *newly acquired car*, a *non-owned car*, a *temporary substitute car* or a trailer which would be covered at no additional charge under the **Trailer Coverage** provision of either of the liability coverages.

3.  The death, dismemberment and loss of sight coverage *you* chose applies anywhere in the world.

# FINANCED VEHICLES

If a creditor is shown in the declarations, we may pay any comprehensive or collision *loss* to:

1.  *you* and, if unpaid, the repairer; or

2.  *you* and such creditor, as its interest may appear, when we find it is not practical to repair *your car*; or

3.  the creditor, as to its interest, if *your car* has been repossessed.

When we pay the creditor for *loss* for which *you* are not covered, we are entitled to the creditor's right of recovery against *you* to the extent of our payment. Our right of recovery shall not impair the creditor's right to recover the full amount of its claim.

The coverage for the creditor's interest only is valid until we terminate it. We will not terminate such coverage because of:

1.  any act or negligence of the owner or borrower; or

2.  a change in the ownership or interest unknown to us, unless the creditor knew of it and failed to tell us within 10 days; or

3.  an error in the description of the vehicle.

The date of termination of the creditor's interest will be at least 10 days after the date we mail the termination notice.

5

8107

# REPORTING A CLAIM —— INSURED'S DUTIES

1. **Notice to Us of an Accident or Loss**

   The *insured* must give us or one of our agents written notice of the accident or *loss* as soon as reasonably possible. The notice must give us:

   a. *your* name; and

   b. the names and addresses of all *persons* involved; and

   c. the hour, date, place and facts of the accident or *loss*; and

   d. the names and addresses of witnesses.

2. **Notice to Us of Claim or Suit**

   If a claim or suit is made against an *insured*, that *insured* must at once send us every demand, notice or claim made and every summons or legal process received.

3. **Other Duties Under the Physical Damage Coverages**

   When there is a *loss*, *you* or the owner of the property also shall:

   a. make a prompt report to the police when the *loss* is the result of theft or larceny.

   b. protect the damaged vehicle. We will pay any reasonable expense incurred to do it.

   c. show us the damage, when we ask.

   d. provide all records, receipts and invoices, or certified copies of them. We may make copies.

   e. answer questions under oath when asked by anyone we name, as often as we reasonably ask, and sign copies of the answers.

4. **Other Duties Under No-Fault, Medical Payments, Uninsured Motor Vehicle and Death, Dismemberment and Loss of Sight Coverages**

   Any *person* who suffers a *bodily injury* which results in a MEDICAL PAYMENTS – COVERAGE C claim must notify us of the claim in writing as soon as reasonably possible after the *person's* first examination or treatment resulting from the *bodily injury*. Another *person* may give us the required notice on behalf of the injured *person*.

   The *person* making claim also shall:

   a. give us all the details about the death, injury, treatment and other information we need to determine the amount payable.

   b. be examined by physicians chosen and paid by us as often as we reasonably may require. A copy of the report will be sent to the *person* upon written request. The *person*, or his or her legal representative if the *person* is dead or unable to act, shall authorize us to obtain all medical reports and records.

   c. answer questions under oath when asked by anyone we name, as often as we reasonably ask, and sign copies of the answers.

   d. under the uninsured motor vehicle coverage:

      (1) report an accident to the police within 24 hours and to us within 30 days if the accident involves a land motor vehicle with an unknown owner or driver.

      (2) let us see the insured *car* the *person occupied* in the accident.

   e. under the no-fault and uninsured motor vehicle coverages, send us at once a copy of all suit papers if the *person* sues the party liable for the accident for damages.

   f. under the no-fault and death, dismemberment and loss of sight coverages, give us proof of claim as soon as practicable on forms we furnish.

5. **Insured's Duty to Cooperate With Us**

   The *insured* shall cooperate with us and, when asked, assist us in:

   a. making settlements;

   b. securing and giving evidence;

   c. attending, and getting witnesses to attend, hearings and trials.

   The *insured* shall not, except at his or her own cost, voluntarily:

   a. make any payment or assume any obligation to others; or

   b. incur any expense, other than for first aid to others.

6

8107

# SECTION I — LIABILITY COVERAGES

**LIABILITY – COVERAGE A.** *You* have this coverage if "A" appears in the "Coverages" space on the declarations page.

We will:

1. pay damages which an *insured* becomes legally liable to pay because of:

   a. *bodily injury* to others, and

   b. damage to or destruction of property including loss of its use,

   caused by accident resulting from the ownership, maintenance or use of *your car*; and

2. defend any suit against an *insured* for such damages with attorneys hired and paid by us. We will not defend any suit after we have paid the applicable limit of our liability for the accident which is the basis of the lawsuit.

In addition to the limits of liability, we will pay for an *insured* any costs listed below resulting from such accident.

1. Court costs of any suit for damages.

2. Interest on damages owed by the *insured* due to a judgment and accruing:

   a. after the judgment, and until we pay, offer or deposit in court, the amount due under this coverage; or

   b. before the judgment, where owed by law, but only on that part of the judgment we pay.

3. Premiums or costs of bonds:

   a. to secure the release of an *insured's* property attached under a court order. The amount of the bond we pay for shall not be more than our limit of liability; and

   b. required to appeal a decision in a suit for damages if we have not paid our limit of liability that applies to the suit; and

   c. up to $250 for each bail bond needed because of an accident or traffic violation.

   We have no duty to furnish or apply for any bonds.

4. Expense incurred by an *insured*:

   a. for loss of wages or salary up to $35 per day if we ask the *insured* to attend the trial of a civil suit.

   b. for first aid to others at the time of the accident.

   c. at our request.

We have the right to investigate, negotiate and settle any claim or suit.

### Coverage for the Use of Other Cars

The liability coverage extends to the use, by an *insured*, of a *newly acquired car*, a *temporary substitute car* or a *non-owned car*.

### Who Is an Insured

When we refer to *your car*, a *newly acquired car* or a *temporary substitute car*, *insured* means:

1. *you*;

2. *your spouse*;

3. the *relatives* of the first *person* named in the declarations;

4. any other *person* while using such a *car* if its use is within the scope of consent of *you* or *your spouse*; and

5. any other *person* or organization liable for the use of such a *car* by one of the above *insureds*.

When we refer to a *non-owned car*, *insured* means:

1. the first *person* named in the declarations;

2. his or her *spouse*;

3. their *relatives*; and

4. any *person* or organization which does not own or hire the *car* but is liable for its use by one of the above *persons*.

THERE IS NO COVERAGE FOR *NON-OWNED CARS*:

1. IF THE DECLARATIONS STATE THE "USE" OF *YOUR CAR* IS OTHER THAN "PLEASURE AND BUSINESS"; OR

2. WHILE:

   a. BEING REPAIRED, SERVICED OR USED BY ANY *PERSON* WHILE THAT *PERSON* IS WORKING IN ANY *CAR BUSINESS*; OR

   b. USED IN ANY OTHER BUSINESS OR OCCUPATION. This does not apply to a *private passenger car* driven or *occupied*

7

by the first *person* named in the declarations, his or her *spouse* or their *relatives*.

## Trailer Coverage

1. Trailers designed to be pulled by a *private passenger car* or a *utility vehicle*, except those trailers in 2.a. below, are covered while owned or used by an *insured*.

   Farm implements and farm wagons are considered trailers while pulled on public roads by a *car* we insure for liability.

   These trailers are not described in the declarations and no extra premium is charged.

2. The following trailers are covered only if described on the declarations page and extra premium is paid:

   a. those trailers designed to be pulled by a *private passenger car* or a *utility vehicle*:

      (1) if designed to carry *persons*; or

      (2) while used with a motor vehicle whose use is shown as "commercial" on the declarations page (trailers used only for pleasure use are covered even if not described and no extra premium paid); or

      (3) while used as premises for office, store or display purposes; or

   b. any trailer not designed for use with a *private passenger car* or a *utility vehicle*.

THERE IS NO COVERAGE WHEN A TRAILER IS USED WITH A MOTOR VEHICLE OWNED OR HIRED BY *YOU* WHICH WE DO NOT INSURE FOR LIABILITY COVERAGE.

## Limits of Liability

The amount of bodily injury liability coverage is shown on the declarations page under "Limits of Liability – Coverage A – Bodily Injury, Each Person, Each Accident." Under "Each Person" is the amount of coverage for all damages due to *bodily injury* to one *person*. *"Bodily injury* to one *person"* includes all injury and damages to others resulting from this *bodily injury*. Under "Each Accident" is the total amount of coverage, subject to the amount shown under "Each Person", for all damages due to *bodily injury* to two or more *persons* in the same accident.

The amount of property damage liability coverage is shown on the declarations page under "Limits of Liability – Coverage A – Property Damage, Each Accident."

We will pay damages for which an *insured* is legally liable up to these amounts.

The limits of liability are not increased because more than one *person* or organization may be an *insured*.

A motor vehicle and attached trailer are one vehicle. Therefore, the limits are not increased.

When two or more motor vehicles are insured under this section the limits apply separately to each.

## When Coverage A Does Not Apply

In addition to the limitations of coverage in **Who Is an Insured** and **Trailer Coverage:**

THERE IS NO COVERAGE:

1. WHILE ANY VEHICLE INSURED UNDER THIS SECTION IS:

   a. RENTED TO OTHERS OR USED TO CARRY *PERSONS* FOR A CHARGE. This does not apply to the use on a share expense basis of:

      (1) a *private passenger car*; or

      (2) a *utility vehicle*, if all passengers are riding in that area of the vehicle designed by the manufacturer of the vehicle for carrying passengers.

   b. BEING REPAIRED, SERVICED OR USED BY ANY *PERSON* EMPLOYED OR ENGAGED IN ANY WAY IN A *CAR BUSINESS*. This does not apply to:

      (1) *you* or *your spouse*;

      (2) any *relative*;

      (3) any resident of *your* household; or

      (4) any agent, employee or partner of *you, your spouse*, any *relative* or such resident.

      This coverage is excess for (3) and (4) above.

2. FOR ANY *BODILY INJURY* TO:

   a. A FELLOW EMPLOYEE WHILE ON THE JOB AND ARISING FROM THE MAINTENANCE OR USE OF A VEHICLE BY ANOTHER EMPLOYEE IN THE EMPLOYER'S BUSINESS. *You* and *your spouse* are covered for such injury to a fellow employee.

   b. ANY EMPLOYEE OF AN *INSURED* ARISING OUT OF HIS OR HER EMPLOYMENT. This does not apply to a household employee who is not covered or required to be covered under any worker's compensation insurance.

8

c. ANY *INSURED* OR ANY MEMBER OF AN *INSURED'S* FAMILY RESIDING IN THE *INSURED'S* HOUSEHOLD.

3. FOR:

    a. THE UNITED STATES OF AMERICA OR ANY OF ITS AGENCIES; OR

    b. ANY *PERSON* WHO IS AN EMPLOYEE OF THE UNITED STATES OF AMERICA OR ANY OF ITS AGENCIES, IF THE PROVISIONS OF THE FEDERAL TORT CLAIMS ACT APPLY.

4. FOR ANY DAMAGES TO PROPERTY OWNED BY, RENTED TO, IN CHARGE OF OR TRANSPORTED BY AN *INSURED*. But coverage applies to a rented:

    a. residence; or

    b. private garage

    damaged by a *car* we insure.

5. FOR ANY OBLIGATION OF AN *INSURED*, OR HIS OR HER INSURER, UNDER ANY TYPE OF WORKER'S COMPENSATION OR DISABILITY OR SIMILAR LAW.

6. FOR LIABILITY ASSUMED BY THE *INSURED* UNDER ANY CONTRACT OR AGREEMENT.

**If There Is Other Liability Coverage or If You Own More Than One Vehicle**

**1. Vehicles You Own**

    a. If the vehicle involved in the accident is owned by *you* or *your spouse*, this coverage applies only if it is:

        (1) *your car*; or

        (2) a trailer described under "Trailer Coverage" for which no extra premium is charged; or

        (3) a *newly acquired car*. THIS COVERAGE DOES NOT APPLY IF THERE IS OTHER VEHICLE LIABILITY COVERAGE ON THE *NEWLY ACQUIRED CAR*.

    b. If *your car* is also described in a policy issued to *you* by another company, the total limits of liability shall not exceed those of the policy with the highest limits of liability. We are liable only for our share of the damages. Our share is the per cent that the limit of liability of the policy issued by us bears to the sum of

the limits of liability of the policies issued by us and the other company.

**2. Policies Issued by Us to You, Your Spouse, or Any Relative**

If two or more vehicle liability policies issued by us to *you, your spouse*, or any *relative* apply to the same accident, the total limits of liability under all such policies shall not exceed that of the policy with the highest limit of liability.

**3. Temporary Substitute Car, Non-Owned Car, Trailer**

If a *temporary substitute car*, a *non-owned car* or a trailer designed for use with a *private passenger car* or *utility vehicle* has other vehicle liability coverage on it, then this coverage is excess.

**4. Other Liability Coverage Available From Other Sources**

Subject to items 1, 2 and 3, if other vehicle liability coverage applies, we are liable only for our share of the damages. Our share is the per cent that the limit of liability of this policy bears to the total of all vehicle liability coverage applicable to the accident.

**Motor Vehicle Compulsory Insurance Law or Financial Responsibility Law**

**1. Out-of-State Coverage**

If an *insured* under the liability coverage is in another state or Canada and, as a non-resident, becomes subject to its motor vehicle compulsory insurance, financial responsibility or similar law:

    a. the policy will be interpreted to give the coverage required by the law; and

    b. the coverage so given replaces any coverage in this policy to the extent required by the law for the *insured's* operation, maintenance or use of a *car* insured under this policy.

Any coverage so extended shall be reduced to the extent other coverage applies to the accident. In no event shall a *person* collect more than once.

**2. Financial Responsibility Law**

When certified under any law as proof of future financial responsibility, and while required during the policy period, this policy shall comply with such law to the extent required. The *insured* agrees to repay us for any payment we would not have had to make under the terms of this policy except for this agreement.

9

8107

**PROPERTY DAMAGE LIABILITY – COVER-AGE B.** *You* have this coverage if "B" appears in the "Coverages" space on the declarations page.

We will:

1. pay damages which an *insured* becomes legally liable to pay because of damage to or destruction of property including loss of its use, caused by accident resulting from the ownership, maintenance or use of *your car*; and

2. defend a suit against an *insured* for such property damage with attorneys hired and paid by us. If a suit seeks damages due to both property damage and *bodily injury* we will only defend the claim for property damage and the *insured* will be required to hire and pay attorneys to defend the claim for damages due to *bodily injury*. We will not defend any suit after we have paid the applicable limit of our liability for the accident which is the basis of the lawsuit.

We have the right to investigate, negotiate and settle any claim or suit.

**Coverage for the Use of Other Cars**

The property damage liability coverage extends to the use, by an *insured*, of a *newly acquired car*, a *temporary substitute car* or a *non-owned car*.

**Who Is an Insured**

When we refer to *your car*, a *newly acquired car* or a *temporary substitute car*, *insured* means:

1. *you*;

2. *your spouse*;

3. the *relatives* of the first *person* named in the declarations;

4. any other *person* while using such a *car* if its use is within the scope of consent of *you* or *your spouse*; and

5. any other *person* or organization liable for the use of such a *car* by one of the above *insureds*.

When we refer to a *non-owned car*, *insured* means:

1. the first *person* named in the declarations;

2. his or her *spouse*;

3. their *relatives*; and

4. any *person* or organization which does not own or hire the *car* but is liable for its use by one of the above *persons*.

THERE IS NO COVERAGE FOR *NON-OWNED CARS*:

1. IF THE DECLARATIONS STATE THE "USE" OF *YOUR CAR* IS OTHER THAN "PLEASURE AND BUSINESS"; OR

2. WHILE:

   a. BEING REPAIRED, SERVICED OR USED BY ANY *PERSON* WHILE THAT *PERSON* IS WORKING IN ANY *CAR BUSINESS*; OR

   b. USED IN ANY OTHER BUSINESS OR OCCUPATION. This does not apply to a *private passenger car* driven or *occupied* by the first *person* named in the declarations, his or her *spouse* or their *relatives*.

**Trailer Coverage**

1. Trailers designed to be pulled by a *private passenger car* or a *utility vehicle*, except those trailers in 2.a. below, are covered while owned or used by an *insured*.

   Farm implements and farm wagons are considered trailers while pulled on public roads by a *car* we insure for liability.

   These trailers are not described in the declarations, and no extra premium is charged.

2. The following trailers are covered only if described on the declarations page and extra premium is paid:

   a. those trailers designed to be pulled by a *private passenger car* or a *utility vehicle*:

      (1) if designed to carry *persons*; or

      (2) while used with a motor vehicle whose use is shown as "commercial" on the declarations page (trailers used only for pleasure use are covered even if not described and no extra premium paid); or

      (3) while used as premises for office, store or display purposes; or

   b. any trailer not designed for use with a *private passenger car* or a *utility vehicle*.

THERE IS NO COVERAGE WHEN A TRAILER IS USED WITH A MOTOR VEHICLE OWNED OR HIRED BY *YOU* WHICH WE DO NOT INSURE FOR LIABILITY COVERAGE OR PROPERTY DAMAGE LIABILITY COVERAGE.

**Limit of Liability**

The amount of property damage liability coverage is shown on the declarations page.

10

We will pay damages for which an *insured* is legally liable up to this amount.

The limit of liability is not increased because more than one *person* or organization may be an *insured*.

A motor vehicle and attached trailer are one vehicle. Therefore, the limits are not increased.

When two or more motor vehicles are insured under this section the limit applies separately to each.

### When Coverage B Does Not Apply

In addition to the limitations of coverage in **Who Is an Insured** and **Trailer Coverage**:

THERE IS NO COVERAGE:

1. WHILE ANY VEHICLE INSURED UNDER THIS SECTION IS:

    a. RENTED TO OTHERS OR USED TO CARRY *PERSONS* FOR A CHARGE.

       This does not apply to the use on a share expense basis of:

       (1) a *private passenger car*; or

       (2) a *utility vehicle*, if all passengers are riding in that area of the vehicle designed by the manufacturer of the vehicle for carrying passengers.

    b. BEING REPAIRED, SERVICED OR USED BY ANY *PERSON* EMPLOYED OR ENGAGED IN ANY WAY IN A *CAR BUSINESS*. This does not apply to:

       (1) *you* or *your spouse*;

       (2) any *relative*;

       (3) any resident of *your* household; or

       (4) any agent, employee or partner of *you, your spouse*, any *relative* or such resident.

       This coverage is excess for (3) and (4) above.

2. FOR ANY *BODILY INJURY*.

3. FOR:

    a. THE UNITED STATES OF AMERICA OR ANY OF ITS AGENCIES; OR

    b. ANY *PERSON* WHO IS AN EMPLOYEE OF THE UNITED STATES OF AMERICA OR ANY OF ITS AGENCIES, IF THE PROVISIONS OF THE FEDERAL TORT CLAIMS ACT APPLY.

4. FOR ANY DAMAGES TO PROPERTY OWNED BY, RENTED TO, IN THE CHARGE OF OR TRANSPORTED BY AN *INSURED*. But coverage applies to a rented:

    a. residence; or

    b. private garage

    damaged by a *car* we insure.

5. FOR ANY OBLIGATION OF AN *INSURED*, OR HIS OR HER INSURER, UNDER ANY TYPE OF WORKERS' COMPENSATION OR DISABILITY OR SIMILAR LAW.

6. FOR LIABILITY ASSUMED BY THE *INSURED* UNDER ANY CONTRACT OR AGREEMENT.

### If There Is Other Liability Coverage or If You Own More Than One Vehicle

1. **Vehicles You Own**

    a. If the vehicle involved in the accident is owned by *you* or *your spouse*, this coverage applies only if it is:

       (1) *your car*; or

       (2) a trailer described under **Trailer Coverage** for which no extra premium is charged; or

       (3) a *newly acquired car*. THIS COVERAGE DOES NOT APPLY IF THERE IS OTHER VEHICLE LIABILITY COVERAGE ON THE *NEWLY ACQUIRED CAR*.

    b. If *your car* is also described in a policy issued to *you* by another company, the total limit of liability shall not exceed that of the policy with the highest limit of liability. We are liable only for our share of the damages. Our share is the per cent that the limit of liability of the policy issued by us bears to the sum of the limit of liability of the policies issued by us and the other company.

2. **Policies Issued by Us to You, Your Spouse or Any Relative**

    If two or more vehicle liability policies issued by us to *you, your spouse*, or any *relative* apply to the same accident, the total limit of liability under all such policies shall not exceed that of the policy with the highest limit of liability.

11

**3. Temporary Substitute Car, Non-Owned Car, Trailer**

If a *temporary substitute car*, a *non-owned car* or a trailer designed for use with a *private passenger car* or *utility vehicle* has other vehicle liability coverage on it then this coverage is excess.

**4. Other Liability Coverage Available From Other Sources**

Subject to items 1, 2 and 3 if other vehicle liability coverage applies, we are liable only for our share of the damages. Our share is the per cent that the limit of liability of this policy bears to the total of all vehicle liability coverage applicable to the accident.

**Motor Vehicle Compulsory Insurance Law or Financial Responsibility Law**

**1. Out-of-State Coverage**

If an *insured* under the liability coverage is in another state or Canada and, as a non-resident, becomes subject to its motor vehicle compulsory insurance, financial responsibility or similar law:

    a.  the policy will be interpreted to give the coverage required by the law; and

    b.  the coverage so given replaces any coverage in this policy to the extent required by the law for the *insured's* operation, maintenance or use of a *car* insured under this policy.

Any coverage so extended shall be reduced to the extent other coverage applies to the accident. In no event shall a *person* collect more than once.

**2. Financial Responsibility Law**

When certified under any law as proof of future financial responsibility, and while required during the policy period, this policy shall comply with such law to the extent required. The *insured* agrees to repay us for any payment we would not have had to make under the terms of this policy except for this agreement.

If *you* have Coverage B, the following changes are made to any endorsements which are a part of *your* policy:

**1.** The phrase "**PROPERTY DAMAGE LIABILITY – COVERAGE B**" replaces the phrases "Section I – Liability – Coverage A" and "Liability – Coverage A" wherever they are found.

**2.** The phrase "**When Coverage B Does Not Apply**" replaces the phrase "When Coverage A Does Not Apply" wherever it is found.

**3.** Any reference to *bodily injury* is deleted from any provision which item 1 or 2 above makes applicable to **PROPERTY DAMAGE LIABILITY – COVERAGE B**.

## SECTION II — NO-FAULT — COVERAGE P AND MEDICAL PAYMENTS — COVERAGE C

**NO-FAULT – COVERAGE P.** *You* have this coverage if "P" with a number beside it appears in the "Coverages" space on the declarations page. "P" with a number beside it is *your* coverage symbol. Check *your* coverage symbol with the schedule in the Limits of Liability for the choice of options *you* made.

**What We Pay**

We will pay in accordance with the *No-Fault Act* for *bodily injury* to an *insured*, caused by an accident resulting from the ownership, maintenance or use of a *motor vehicle*:

**1. Medical Expenses.** 80% of the reasonable charges incurred for necessary:

    a.  medical, surgical, X-ray, dental, ambulance, hospital, professional nursing and rehabilitative services,

    b.  eyeglasses, hearing aids and prosthetic devices, and

    c.  remedial religious treatment or services by a recognized method of healing.

**2. Income Loss.** 60% of loss of income and earning capacity due to the *insured's* inability

12
8107

to work caused by his or her *bodily injury* during the time the *insured* is not able to work.

3. **Replacement Services Loss.** Reasonable expenses incurred for ordinary and needed services the *insured* would have done, except for the injury, for the benefit of his or her household during the time the *insured* is not able to work.

4. **Death Benefits.** Death benefits of $5,000 per *person.*

*Insured* – means:

1. *you* or any *relative*:

   a. while *occupying* a motor vehicle; or

   b. struck as a *pedestrian* by a *motor vehicle*;

2. anyone else while *occupying* or when struck as a *pedestrian* by *your car*, a *newly acquired car*, a *non-owned car*, a *temporary substitute car* or a trailer which would be covered at no additional charge under the **Trailer Coverage** provision of either of the liability coverages.

*Motor Vehicle* – means a vehicle with four or more wheels that:

1. is self-propelled and is of a type:

   a. designed for, and

   b. required to be licensed for

   use on Florida highways; or

2. is a trailer or semitrailer designed for use with a vehicle described in 1 above.

It does not include:

1. a mobile home; or

2. any motor vehicle which is:

   a. used in mass transit, other than public school transportation; and

   b. designed to transport more than five passengers, exclusive of the operator; and

   c. owned by a municipality, a transit authority, or a political subdivision of the state.

*No-Fault Act* – means the Florida Motor Vehicle No-Fault Law and any amendments.

*Pedestrian* – means a person while not an occupant of any self-propelled vehicle.

## Disputes Regarding Charges for Treatment of Injured Persons

Any claim dispute involving medical benefits under this section of the policy between us and a medical services or supplies provider (hereinafter referred to as health care provider) who has agreed to accept an assignment of personal injury protection benefits shall be decided by arbitration upon written request of either party.

Upon written request for arbitration, each party shall select an arbitrator. The two arbitrators shall attempt to select a third arbitrator. If they are unable to agree on a third arbitrator within 30 days, either party may request a judge of a court of record in the county in which the arbitration is pending to appoint the third arbitrator. A written decision concurred upon by any two arbitrators shall be binding on each party.

As a condition of maintaining a claim dispute in arbitration, the health care provider shall make available for inspection and copying the entire file pertaining to the patient that is the subject of this proceeding. This file shall include patient questionnaires, reports, and test results, unless we advise in writing that certain of such materials need not be provided. No arbitration may be held until 30 days after the required request for arbitration and patient file has been supplied to us. Any arbitration award shall not exceed the personal injury protection coverage limits remaining on the policy.

The prevailing party to the arbitration shall be entitled to attorney's fees and costs. The prevailing party is determined as follows:

1. When the amount of personal injury protection benefits determined by arbitration exceeds the sum of the amount offered by us at arbitration plus 50 per cent of the difference between the amount of the claim asserted by the claimant at arbitration and the amount offered by us at arbitration, the claimant is the prevailing party.

2. When the amount of personal injury protection benefits determined by arbitration is less than the sum of the amount offered by us at arbitration plus 50 per cent of the difference between the amount of the claim asserted by the claimant at arbitration and the amount offered by us at arbitration, we are the prevailing party.

3. When neither subparagraph 1 above nor subparagraph 2 above applies, there is no prevailing party. For purposes of this paragraph, the

13

amount of the offer or claim at arbitration is the amount of the last written offer or claim made at least 30 days prior to the arbitration.

4. In the demand for arbitration, the party requesting arbitration must include a statement specifically identifying the issues for arbitration for each examination or treatment in dispute. The other party must subsequently issue a statement specifying any other examinations or treatment and any other issues that it intends to raise in the arbitration. The parties may amend their statements up to 30 days prior to arbitration, provided that arbitration shall be limited to those identified issues and neither party may add additional issues during arbitration.

The arbitration shall take place in the county in which the health care provider is located. If they are located out-of-state, arbitration shall take place in the county in which the *insured* resides, unless the health care provider and we agree to another place. Arbitration is subject to the provisions of the Florida Arbitration Code, Chapter 682 of the Florida Statutes.

This arbitration provision does not apply to disputes regarding the termination of personal injury protection benefits.

### Payment of Any Amount Due

We will pay any amount due:

1. to an *insured*;

2. to a parent or guardian, if the *insured* is a minor or an incompetent *person*;

3. to the surviving *spouse*; or

4. at our option:

    a. to a *person* authorized by law to receive such payment; or

    b. to the *person* or organization rendering the treatment or services.

### When Payments Are Reduced

We will reduce the amount payable by:

1. the deductible amount shown in the Schedule for *your* coverage symbol. The deductible amount does not apply to death benefits.

2. Military benefits paid or payable when the schedule shows the reduction for *your* coverage symbol; and

3. the amount of any workers' compensation benefits paid or payable for the same items of loss or expense.

### No Duplication of Benefits

No *insured* shall recover twice for the same expense or loss under this or similar vehicle insurance or self-insurance.

### Reimbursement

We have a right to recover our no-fault payments from the owner of or the company insuring a *motor vehicle* of a type not included in 2a or 2b below if:

1. we have made payment for *bodily injury* resulting from the *insured's occupying* or being struck as a *pedestrian* by that *motor vehicle*; and

2. the *motor vehicle* we insure for no-fault coverage is:

    a. a sedan, station wagon or jeep type vehicle; or

    b. a pickup, panel, van, camper or motor home type and not used mainly in an occupation, profession or business.

### Limits of Liability

1. The most we pay.

    The most we pay for each *insured* for all loss and expense from one accident shall be $10,000 less the amount of any reduction described under **When Payments Are Reduced** that applies to the *insured*.

## 2. SCHEDULE

| Coverage Symbol | Deductible That Applies To *You* | Deductible That Applies To Each Of *Your* Dependent *Relatives* | Reduction for Military Benefits Applies | Loss of Income Benefits Eliminated |
|---|---|---|---|---|
| P10 | None | None | No | No |
| P12 | None | None | Yes | No |
| P14 | None | None | No | Yes |
| P16 | None | None | Yes | Yes |
| P20 | $250 | None | No | No |
| P21 | $250 | $250 | No | No |
| P30 | $500 | None | No | No |
| P31 | $500 | $500 | No | No |
| P40 | $1000 | None | No | No |
| P41 | $1000 | $1000 | No | No |
| P50 | $2000 | None | No | No |
| P51 | $2000 | $2000 | No | No |

### If There Is Other No-Fault Coverage or If You Own More Than One Vehicle

**1. Vehicles You Own**

a. If the vehicle involved in the accident is owned by *you* or *your spouse*, this coverage applies only if it is:

(1) *your car*; or

(2) a *newly acquired car*. THIS COVERAGE DOES NOT APPLY IF THERE IS OTHER NO-FAULT COVERAGE ON THE *NEWLY ACQUIRED CAR*.

b. If *your car* is also described in a policy issued to *you* by another company, the total limits of liability shall not exceed those of the policy with the highest limits of liability. We are liable only for our share of the damages. Our share is the per cent that the limit of liability of the policy issued by us bears to the sum of the limits of liability of the policies issued by us and the other company.

**2. Policies Issued by Us to You**

If two or more policies providing no-fault coverage issued by us to *you* apply to the same accident, the total limits of liability under all such policies shall not exceed that of the policy with the highest limit of liability.

**3. Coverage Available From Other Sources**

Subject to items 1 and 2, if other no-fault coverage applies, we will pay only our share. Our share is the per cent that the limit of liability of the policy issued by us bears to the total of all coverage applicable to the accident.

### What Is Not Covered Under Coverage P

THERE IS NO COVERAGE:

**1.** FOR *BODILY INJURY* TO:

a. ANY *PEDESTRIAN* NOT A LEGAL RESIDENT OF FLORIDA. This does not apply to *you* or any *relative*.

b. ANY *PERSON* ENTITLED TO NO-FAULT BENEFITS FROM:

(1) THE OWNER OF A *MOTOR VEHICLE* OTHER THAN *YOU* OR

(2) THAT OWNER'S INSURER.

This does not apply to *you* or any *relative*.

**2.** FOR ANY *PERSON*:

a. WHOSE CONDUCT CONTRIBUTED TO HIS OR HER *BODILY INJURY* UNDER ANY OF THE FOLLOWING CIRCUMSTANCES:

(1) CAUSING *BODILY INJURY* TO HIMSELF OR HERSELF INTENTIONALLY; OR

(2) WHILE COMMITTING A FELONY; OR

b. WHOSE *BODILY INJURY* OCCURRED WHILE:

(1) DRIVING *YOUR CAR* OR A *NEWLY ACQUIRED CAR* WITHOUT *YOUR* PERMISSION;

15
8107

(2) *OCCUPYING A MOTOR VEHI-CLE* LOCATED FOR USE AS A DWELLING OR PREMISES;

c. WHO OWNS A *MOTOR VEHICLE* SUBJECT TO THE *NO-FAULT ACT*.

This does not apply to *you* and, if the accident occurs outside Florida, any *relative* while *occupying your car*.

3. FOR INCOME LOSS WHEN THE SCHEDULE SHOWS INCOME LOSS BENEFITS ARE ELIMINATED UNDER *YOUR* COVERAGE SYMBOL.

**MEDICAL PAYMENTS – COVERAGE C.** *You* have this coverage if "C" appears in the "Coverages" space on the declarations page.

We will pay reasonable medical expenses incurred for *bodily injury* caused by accident. These expenses are for necessary:

1. medical, surgical, X-ray, dental, ambulance, hospital, professional nursing and rehabilitative services,

2. eyeglasses, hearing aids and prosthetic devices,

3. remedial religious treatment or services by a recognized method of healing; and

4. funeral expenses.

These incurred expenses must be:

1. for:

a. services performed, or

b. medical supplies, medication or drugs prescribed

by a medical provider licensed by the state to provide the specific medical services; and

2. for funeral services or remedial religious treatment or services by a recognized method of healing.

We have the right to make or obtain a utilization review of the medical expenses and services to determine if they are reasonable and necessary for the *bodily injury* sustained.

The accident must result from the ownership, maintenance or use of a motor vehicle.

**Persons for Whom Medical Expenses Are Payable**

We will pay medical expenses for *bodily injury* sustained by:

1. a. the first *person* named in the declarations;

b. his or her *spouse*; and

c. their *relatives*.

These *persons* have to sustain the *bodily injury*:

a. while they operate or *occupy* a vehicle covered under the liability section; or

b. through being struck as a *pedestrian* by a self-propelled vehicle or trailer.

*Pedestrian* means a *person* not an occupant of any self-propelled vehicle.

2. any other *person* while *occupying*:

a. a vehicle covered under the liability coverage, except a *non-owned car*. Such vehicle has to be used by a *person* who is insured under the liability coverage; or

b. a *non-owned car*. The *bodily injury* has to result from such *car's* operation or occupancy by the first *person* named in the declarations, his or her *spouse* or their *relatives*.

**Payment of Medical Expenses**

We may pay the injured *person* or any *person* or organization performing the services.

**Limit of Liability**

1. The amount of coverage for medical expenses, including funeral services, is shown on the declarations page under "Limit of Liability – Coverage C – Each Person". If the amount shown is $3,000 or more, the most we pay for funeral services is $3,000 per *person*.

2. This coverage is excess over:

a. any medical expenses paid or payable under no-fault coverage P, or which would be except for any reduction described under no-fault coverage P **When Payments Are Reduced**; and

b. military benefits.

3. The liability and uninsured motor vehicle coverages shall be excess over and shall not pay again any medical expenses paid under this coverage.

**Two or More Vehicles**

1. A motor vehicle and attached trailer are one vehicle as respects limits.

2. When two or more motor vehicles are insured under this section the limits apply separately to each.

16

8107

**If There Are Other Medical Payments Coverages or If You Own More Than One Vehicle**

**1. Vehicles You Own**

a. If the vehicle involved in the accident is owned by *you* or *your spouse*, this coverage applies only if it is:

(1) *your car*; or

(2) a trailer described under **Trailer Coverage** for which no extra premium is charged; or

(3) a *newly acquired car*. THIS COVERAGE DOES NOT APPLY IF THERE IS OTHER VEHICLE MEDICAL PAYMENTS COVERAGE ON THE *NEWLY ACQUIRED CAR*.

b. If *your car* is also described in a policy issued to *you* by another company, the total limits of liability shall not exceed those of the policy with the highest limits of liability. We are liable only for our share of the damages. Our share is the per cent that the limit of liability of the policy issued by us bears to the sum of the limits of liability of the policies issued by us and the other company.

**2. Policies Issued by Us to You**

If two or more vehicle policies providing medical payments coverage issued by us to *you* apply to the same accident, the total limits of liability under all such policies shall not exceed that of the policy with the highest limit of liability.

**3. Temporary Substitute Car, Non-Owned Car, Trailer or Pedestrian**

Subject to item 2, this coverage is excess if other vehicle medical payments coverage applies to:

a. a *temporary substitute car*, a *non-owned car* or a trailer; or

b. *bodily injury* sustained by a *pedestrian*.

**4. Coverage Available From Other Sources**

Subject to items 1, 2 and 3, if other vehicle medical payments coverage applies, we are liable only for our share of the damages. Our share is the per cent that the limit of liability of the policy issued by us bears to the total of all vehicle medical payments coverage applicable to the accident.

**What Is Not Covered Under Coverage C**

THERE IS NO COVERAGE UNDER MEDICAL PAYMENTS:

1. WHILE A *NON-OWNED CAR* IS USED:

a. BY ANY *PERSON* EMPLOYED OR ENGAGED IN ANY WAY IN A *CAR BUSINESS*; OR

b. IN ANY OTHER BUSINESS OR JOB. This does not apply when the first *person* named in the declarations, his or her *spouse* or any *relative* is operating or occupying a *private passenger car*.

2. WHILE *OCCUPYING* OR THROUGH BEING STRUCK BY ANY MOTOR VEHICLE OR TRAILER:

a. DESIGNED MAINLY FOR USE OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS; OR

b. LOCATED FOR USE AS A RESIDENCE OR PREMISES; OR

c. THAT RUNS ON RAILS OR CRAWLER-TREADS.

3. FOR *BODILY INJURY* DUE TO WAR OF ANY KIND.

4. FOR MEDICAL EXPENSES FOR *BODILY INJURY*:

a. SUSTAINED WHILE *OCCUPYING* OR THROUGH BEING STRUCK BY A VEHICLE OWNED BY *YOU, YOUR SPOUSE*, OR ANY *RELATIVE*, WHICH IS NOT INSURED UNDER THIS COVERAGE; OR

b. TO THE EXTENT WORKER'S COMPENSATION BENEFITS ARE REQUIRED TO BE PAYABLE; OR

c. SUSTAINED BY ANY *PERSON*, other than the first *person* named in the declarations, his or her *spouse* or their *relatives*, WHILE *OCCUPYING* A VEHICLE:

(1) RENTED TO OTHERS; OR

(2) USED TO CARRY *PERSONS* FOR A CHARGE. This does not apply to a *private passenger car* used on a share expense basis.

d. SUSTAINED BY ANY *PERSON* WHO AT THE TIME OF THE ACCIDENT:

(1) OWNS A MOTOR VEHICLE SUBJECT TO THE *NO-FAULT ACT*; AND

(2) IS NOT INSURED FOR THE COVERAGE REQUIRED BY THE *NO-FAULT ACT*.

This does not apply to *you* and, if the accident occurs outside Florida, any *relative* while *occupying your car*.

17
8107

## SECTION III — UNINSURED MOTOR VEHICLE — COVERAGES U AND U3

### UNINSURED MOTOR VEHICLE – COVERAGE U

**(Includes Underinsured Motor Vehicle Coverage on an Excess Basis)**

*You* have this coverage if "U" appears in the "Coverages" space on the declarations page.

### UNINSURED MOTOR VEHICLE — COVERAGE U3

**(Non-Stacking Optional Form)**

*You* have this coverage if "U3" appears in the" Coverages" space on the declarations page.

### UNINSURED MOTOR VEHICLE — COVERAGES U and U3

We will pay damages for *bodily injury* an *insured* is legally entitled to collect from the owner or driver of an *uninsured motor vehicle.* The *bodily injury* must be sustained by an *insured* and must be caused by accident arising out of the operation, maintenance or use of an *uninsured motor vehicle.*

The *bodily injury* must be a serious injury as described in section 627.737(2) of the Florida Motor Vehicle No-Fault Law before we will pay for damages consisting of pain, suffering, mental anguish, or inconvenience.

*Uninsured Motor Vehicle* – means:

1. a land motor vehicle, the ownership, maintenance or use of which is:

   a. not insured, not self-insured or not bonded for bodily injury liability at the time of the accident; or

   b. insured, self-insured or bonded for bodily injury liability at the time of the accident; but

      (1) the limits of liability of the insurance, self-insurance or bond are less than required by the financial responsibility act of the state where *your car* is mainly garaged; or

      (2) the limits of liability of the insurance, self-insurance or bond are less than the damages for *bodily injury* sustained by the *insured*; or

      (3) the insuring company or self-insurer denies coverage or is or becomes insolvent; or

2. a land motor vehicle whose owner or driver remains unknown and who was the proximate cause of *bodily injury* to an *insured*.

A self-insured motor vehicle is one owned or operated by a self-insurer under any motor vehicle financial responsibility law, a motor carrier law or any similar law.

An *uninsured motor vehicle* does not include a land motor vehicle:

1. insured under the liability coverage of this policy, unless *you, your spouse* or any *relative* sustains *bodily injury* while the vehicle is being operated by a *person* other than *you, your spouse* or any *relative*;

2. furnished for the regular use of *you, your spouse* or any *relative*;

3. designed for use mainly off public roads except while on public roads; or

4. while located for use as premises.

### Who Is an Insured

#### Coverage U

*Insured* – means the *person* or *persons* covered by uninsured motor vehicle coverage. This is:

1. the first *person* named in the declarations;

2. his or her *spouse*;

3. their *relatives*; and

4. any other *person* while *occupying*:

   a. *your car*, a *temporary substitute car*, a *newly acquired car* or a trailer attached to such *car*. Such vehicle has to be used within the scope of the consent of *you* or *your spouse*; or

   b. a *car* not owned by *you, your spouse* or any *relative*, or a trailer attached to such a *car*. It has to be driven by the first *person* named in the declarations or that *person's spouse* and within the scope of the owner's consent.

Such other *person occupying* a vehicle used to carry *persons* for a charge is not an *insured.* This does not apply to the use on a share expense basis.

18

5. any *person* entitled to recover damages because of *bodily injury* to an *insured* under 1 through 4 above.

## Coverage U3

*Insured* – means the *person* or *persons* covered by uninsured motor vehicle coverage. This is:

1. the first *person* named in the declarations;

2. his or her *spouse*;

3. their *relatives*; and

4. any other *person* while *occupying*:

   a. *your car*, a *temporary substitute car*, a *newly acquired car* or a trailer attached to such *car*. Such vehicle has to be used within the scope of the consent of *you* or *your spouse*; or

   b. a *car* not owned by *you, your spouse*, any *relative* or such other *person* or a trailer attached to such a *car*. It has to be driven by the first *person* named in the declarations or that *person's spouse* and within the scope of the owner's consent.

   Such other *person occupying* a vehicle used to carry *persons* for a charge is not an *insured*. This does not apply to the use on a share expense basis.

5. any *person* entitled to recover damages because of *bodily injury* to an *insured* under 1 through 4 above.

## Deciding Fault and Amount – Coverages U and U3

Two questions must be decided by agreement between the *insured* and us:

1. Is the *insured* legally entitled to collect damages from the owner or driver of the *uninsured motor vehicle*; and

2. If so, in what amount?

If there is no agreement, then:

1. If both parties consent, these questions shall be decided by arbitration as follows:

   Each party shall select a competent and impartial arbitrator. These two shall select a third one. The written decision of any two of the three arbitrators shall be binding on each party. If the two selected arbitrators are unable to agree on a third one within 30 days, the *insured* shall proceed as provided in item 2. below.

The cost of the arbitrator and any expert witness shall be paid by the party who hired them. The cost of the third arbitrator and other expenses of arbitration shall be shared equally by both parties.

The arbitration shall take place in the county in which the *insured* resides unless the parties agree to another place. State court rules governing procedure and admission of evidence shall be used; or

2. If either party does not consent to arbitrate these questions or if the arbitrators selected by each party cannot agree on a third arbitrator, the *insured* shall:

   a. file a lawsuit in the proper court against the owner or driver of the *uninsured motor vehicle* and us, or if such owner or driver is:

      (1) unknown; or

      (2) has been released from liability according to the terms of this provision,

      against us; and

   b. upon filing, immediately give us copies of the summons and complaints filed by the *insured* in that action, and

   c. secure a judgment in that action. The judgment must be the final result of an actual trial and an appeal, if an appeal is taken.

3. If the *insured* files suit against the owner or driver of the *uninsured motor vehicle*, we have the right to defend on the issues of the legal liability of and the damages owed by such owner or driver.

   If the *insured* reaches a settlement agreement with the party legally liable for the *insured's bodily injury* and his or her insurer, the *insured* must submit written notice to us, by certified or registered mail, of the proposed settlement agreement if:

   a. the settlement would not fully satisfy the *insured's* claim for *bodily injury*; and

   b. an *uninsured motor vehicle* claim has been or will be made against us.

   If, within 30 days after our receipt of the notice of the proposed settlement, we:

   a. authorize the settlement; or

   b. fail to respond;

19

8107

the *insured* may proceed to execute a full release in favor of the party legally liable for the *insured's bodily injury* and his or her insurer, and finalize the proposed settlement without losing the right to make an *uninsured motor vehicle* claim against us.

If we refuse to authorize the proposed settlement we must, within 30 days after receipt of the notice, pay the *insured* the amount of the written offer from the insurer of the party legally liable for the *insured's bodily injury*. We are then entitled to seek subrogation against the party legally liable for the *insured's bodily injury* and his or her insurer upon final resolution of the claim.

In determining the amount payable under this coverage we may reduce the *insured's* damages by the amount of the liability limits of the policy insuring the party legally liable for the *bodily injury*.

Except as provided above:

1. We are not bound by any judgment against any party obtained without our written consent; and,

2. The *insured* shall not enter into any settlement with any party legally liable for the *insured's bodily injury* without our consent if the settlement agreement precludes our right of recovery against such party.

**Payment of Any Amount Due – Coverages U and U3**

We will pay any amount due:

1. to the *insured*;

2. to a parent or guardian if the *insured* is a minor or an incompetent *person*;

3. to the surviving *spouse*; or

4. at our option, to a *person* authorized by law to receive such payment.

**Limits of Liability**

**Coverage U**

1. The amount of coverage is shown on the declarations page under "Limits of Liability – U – Each Person, Each Accident". Under "Each Person" is the amount of coverage for all damages due to *bodily injury* to one *person*. "*Bodily injury* to one *person*" includes all injury and damages to others resulting from this *bodily injury*. Under "Each Accident" is the total amount of coverage, subject to the amount shown under "Each Person", for all damages due to *bodily injury* to two or more *persons* in the same accident.

2. This coverage is excess over, but shall not duplicate, any amount:

   a. paid to or for the *insured* by or for any *person* or organization who is or may be held legally liable for the *bodily injury* to the *insured*; and

   b. paid or payable under:

      (1) any workers' compensation, disability benefits, or similar law;

      (2) the no-fault coverage, or which would be payable except for a deductible;

      (3) any *car* medical expense coverage; and

      (4) any *car* liability coverage.

3. The limits of liability are not increased because:

   a. more than one vehicle is insured under this policy; or

   b. more than one *person* is insured at the time of the accident.

**Coverage U3**

1. The amount of coverage is shown on the declarations page under "Limits of Liability – U3 – Each Person, Each Accident". Under "Each Person" is the amount of coverage for all damages due to *bodily injury* to one *person*. "*Bodily injury* to one *person*" includes all injury and damages to others resulting from this *bodily injury*. Under "Each Accident" is the total amount of coverage, subject to the amount shown under "Each Person", for all damages due to *bodily injury* to two or more persons in the same accident.

2. This coverage is excess over, but shall not duplicate, any amount:

   a. paid to or for the *insured* by or for any *person* or organization who is or may be held legally liable for the *bodily injury* to the *insured*; and

   b. paid or payable under:

      (1) any workers' compensation, disability benefits, or similar law;

      (2) the no-fault coverage, or which would be payable except for a deductible;

      (3) any *car* medical expense coverage; and

      (4) any *car* liability coverage.

3. Except as provided in item 3 of **If There Is Other Uninsured Motor Vehicle Coverage**, regardless of the number of motor vehicles involved, the number of *persons* covered or claims made, vehicles or premiums shown in the policy or premiums paid, the limit of liability for uninsured motor vehicle coverage shall not be added to or

20

8107

stacked upon limits for such coverages applying to other motor vehicles to determine the amount of coverage available to an *insured* injured in any one accident.

4. The limits of liability are not increased because:

   a. more than one vehicle is insured under this policy; or

   b. more than one *person* is insured at the time of the accident.

**When Coverage U Does Not Apply**

THERE IS NO COVERAGE TO THE EXTENT IT BENEFITS:

1. ANY WORKERS' COMPENSATION OR DISABILITY BENEFITS INSURANCE COMPANY.

2. A SELF-INSURER UNDER ANY WORKERS' COMPENSATION, OR DISABILITY BENEFITS OR SIMILAR LAW.

3. ANY GOVERNMENTAL BODY OR AGENCY.

**When Coverage U3 Does Not Apply**

THERE IS NO COVERAGE:

1. TO THE EXTENT IT BENEFITS:

   a. ANY WORKERS' COMPENSATION OR DISABILITY BENEFITS INSURANCE COMPANY.

   b. A SELF-INSURER UNDER ANY WORKERS' COMPENSATION, OR DISABILITY BENEFITS OR SIMILAR LAW.

   c. ANY GOVERNMENTAL BODY OR AGENCY.

2. FOR *BODILY INJURY* TO AN *INSURED* WHILE *OCCUPYING* ANY VEHICLE OWNED BY *YOU, YOUR SPOUSE,* OR ANY *RELATIVE* IF IT IS NOT INSURED FOR THIS COVERAGE UNDER THIS POLICY. This does not apply to an *insured occupying* a *newly acquired car* which has no uninsured motor vehicle coverage applicable to it.

**If There Is Other Uninsured Motor Vehicle Coverage**

**Coverage U**

1. If an *insured* is *occupying* or is struck as a pedestrian by a vehicle:

   a. which is not *your car*; and

   b. other uninsured motor vehicle coverage applies, this coverage is excess.

2. Subject to item 1 above, if other uninsured motor vehicle coverage applies, we are liable only for our share of the damages. Our share is the per cent that the limit of liability of the coverage issued by us bears to the total of all uninsured motor vehicle coverage applicable to the accident.

**Coverage U3**

1. If an *insured* sustains *bodily injury* while not *occupying* a motor vehicle and other uninsured motor vehicle coverage is available:

   a. the *insured* must select the limit of one such coverage under which to make claim; and

   b. THIS COVERAGE DOES NOT APPLY IF THE *INSURED* SELECTS ANY OTHER UNINSURED MOTOR VEHICLE COVERAGE UNDER WHICH TO MAKE CLAIM.

2. If the *insured* sustains *bodily injury* while *occupying your car*, and *your car* is described on the declarations page of another policy providing uninsured motor vehicle coverage:

   a. the total limits of liability under all such coverages shall not exceed that of the coverage with the highest limit of liability; and

   b. we are liable only for our share. Our share is that per cent of the damages that the limit of liability of this coverage bears to the total of all uninsured motor vehicle coverage applicable to the accident.

3. If an *insured* as defined in item 1, 2 or 3 of the definition of *insured* sustains *bodily injury* while *occupying* a vehicle not owned by *you, your spouse* or a *relative*, such injured *person* can select one uninsured motor vehicle coverage that covers the injured *person* as a named insured or *relative* to apply:

   a. as excess over the coverage on the vehicle *occupied*; or

   b. as primary if there is no coverage on the vehicle *occupied*.

THIS COVERAGE DOES NOT APPLY IF OTHER APPLICABLE COVERAGE IS SELECTED.

4. If an *insured* as defined in item 4 of the definition of *insured* sustains *bodily injury* while *occupying* a vehicle not owned by *you, your spouse, your relatives* or such *insured*:

   a. THIS COVERAGE DOES NOT APPLY TO SUCH *INSURED* IF THERE IS OTHER UNINSURED MOTOR VEHICLE COVERAGE:

(1) APPLICABLE TO THE VEHICLE *OC-CUPIED*; OR

(2) AVAILABLE TO SUCH *INSURED* AS A NAMED INSURED OR INSURED FAMILY MEMBER UNDER ANOTHER POLICY PROVIDING UNINSURED MOTOR VEHICLE COVERAGE.

b. and, subject to a. above, coverage under more than one policy issued to *you, your spouse* or *your relatives* is applicable, the injured *person* can select one such uninsured motor vehicle coverage to apply.

THIS COVERAGE DOES NOT APPLY IF OTHER APPLICABLE COVERAGE IS SELECTED.

# SECTION IV — PHYSICAL DAMAGE COVERAGES

*Loss* – means, when used in this section, each direct and accidental loss of or damage to:

1. *your car;*

2. its equipment which is common to the use of *your car* as a vehicle;

3. clothes and luggage insured; and

4. a detachable living quarters attached or removed from *your car* for storage. Detachable living quarters includes its body and items securely fixed in place as a permanent part of the body. *You* must have told us about the living quarters before the *loss* and paid any extra premium needed.

**COMPREHENSIVE – COVERAGE D.** *You* have this coverage if "D" appears in the "Coverages" space on the declarations page. If a deductible applies the amount is shown by the number beside "D".

1. Loss to *Your Car*. We will pay for *loss* to *your car* EXCEPT *LOSS BY COLLISION* but only for the amount of each such *loss* in excess of the deductible amount, if any. If the *loss* is breakage of glass, the deductible does not apply.

Breakage of glass, or *loss* caused by missiles, falling objects, fire, theft, larceny, explosion, earthquake, windstorm, hail, water, flood, malicious mischief or vandalism, riot or civil commotion, is payable under this coverage. *Loss* due to hitting or being hit by a bird or an animal is payable under this coverage.

2. We will repay *you* for transportation costs if *your car* is stolen. We will pay up to $16 per day for the period that begins 48 hours after *you* tell us of the theft. The period ends when we offer to pay for *loss*.

**COLLISION – 80% – COVERAGE F.** *You* have this coverage if "F" appears in the "Coverages" space on the declarations page.

We will pay 80% of the first $250 and 100% over that amount of *loss* to *your car* caused by *collision*. If we offer to pay for the repair of damaged windshield glass instead of the replacement of the windshield and *you* agree to have such repair made, we will pay the full cost of repairing the windshield glass regardless of *your* deductible. If the *collision* is with another motor vehicle insured by us, we will pay 100% of the *loss*.

22

**COLLISION – COVERAGE G. You** have this coverage if "G" appears in the "Coverages" space on the declarations page. The deductible amount is shown by the number beside "G".

We will pay for **loss** to **your car** caused by **collision** but only for the amount of each such **loss** in excess of the deductible amount. If we offer to pay for the repair of damaged windshield glass instead of the replacement of the windshield and **you** agree to have such repair made, we will pay the full cost of repairing the windshield glass regardless of **your** deductible. If the **collision** is with another motor vehicle insured with us, **you** do not pay **your** deductible if it is $100 or less as we pay it.

**Collision** – means **your car** upset or hit or was hit by a vehicle or other object.

**Clothes and Luggage – Comprehensive and Collision Coverages**

We will pay for **loss** to clothes and luggage owned by the first **person** named in the declarations, his or her **spouse**, and their **relatives**. These items have to be in or on **your car**. **Your car** has to be covered under this policy for:

1. Comprehensive, and the **loss** caused by fire, lightning, flood, falling objects, explosion, earthquake or theft. If the **loss** is due to theft, **YOUR** ENTIRE **CAR** MUST HAVE BEEN STOLEN; or

2. Collision, and the **loss** caused by **collision**.

We will pay up to $200 for **loss** to clothes and luggage in excess of any deductible amount shown for comprehensive or collision. $200 is the most we will pay in any one occurrence even though more than one **person** has a **loss**. This coverage is excess over any other coverage.

**Limit of Liability – Comprehensive and Collision Coverages**

The limit of our liability for **loss** to property or any part of it is the lower of:

1. the actual cash value; or

2. the cost of repair or replacement.

Actual cash value is determined by the market value, age and condition at the time the **loss** occurred. Any deductible amount that applies is then subtracted.

The cost of repair or replacement is based upon one of the following:

1. the cost of repair or replacement agreed upon by **you** and us;

2. a competitive bid approved by us; or

3. an estimate written based upon the prevailing competitive price. The prevailing competitive price means prices charged by a majority of the repair market in the area where the **car** is to be repaired as determined by a survey made by us. If **you** ask, we will identify some facilities that will perform the repairs at the prevailing competitive price. We will include in the estimate parts sufficient to restore the vehicle to its pre-loss condition. **You** agree with us that such parts may include either parts furnished by the vehicle's manufacturer or parts from other sources including non-original equipment manufacturers.

Any deductible amount that applies is then subtracted.

**Settlement of Loss – Comprehensive and Collision Coverages**

We have the right to settle a loss with **you** or the owner of the property in one of the following ways:

1. pay the agreed upon actual cash value of the property at the time of the **loss** in exchange for the damaged property. If the owner keeps the damaged property, we will deduct its value after the **loss** from our payment. The damaged property cannot be abandoned to us;

2. pay to:

   a. repair the damaged property or part, or

   b. replace the property or part.

   If the repair or replacement results in betterment, **you** must pay for the amount of betterment; or

3. return the stolen property and pay for any damage due to the theft.

The **Settlement of Loss** provision for comprehensive and collision coverages incorporates the **Limit of Liability** provision of those coverages.

If we can pay the **loss** under either comprehensive or collision, we will pay under the coverage where **you** collect the most.

When there is **loss** to **your car**, clothes and luggage in the same occurrence, any deductible will be applied first to the **loss** to **your car**. **You** pay only one deductible.

**EMERGENCY ROAD SERVICE – COVERAGE H. You** have this coverage if "H" appears in the "Coverages" space on the declarations page.

We will pay the fair cost **you** incur for **your car** for:

1. mechanical labor up to one hour at the place of its breakdown;

23

2. towing to the nearest place where the necessary repairs can be made during regular business hours if it will not run;

3. towing it out if it is stuck on or immediately next to a public highway;

4. delivery of gas, oil, loaned battery, or change of tire. WE DO NOT PAY FOR THE COST OF THESE ITEMS.

## CAR RENTAL EXPENSE – COVERAGE R. *You* have this coverage if "R" appears in the "Coverages" space on the declarations page.

We will repay *you* up to $10 per day when *you* rent a car from a car rental agency or garage due to a *loss* to *your car* which would be payable under coverage D, F or G, starting:

1. when it cannot run due to the *loss;* or

2. if it can run, when *you* leave it at the shop for agreed repairs;

and ending when:

1. it has been repaired or replaced, or

2. we offer to pay for the *loss,* or

3. *you* incur 30 days rent,

whichever comes first.

Any car rent payable under coverage R is REDUCED TO THE EXTENT IT IS PAYABLE UNDER COMPREHENSIVE.

## CAR RENTAL AND TRAVEL EXPENSES – COVERAGE R1. *You* have this coverage if "R1" appears in the "Coverages" space on the declarations page.

1. **Car Rental Expense.** We will:

   a. pay *you* up to $16 of the daily rental charge when *you* rent a *car* from a car rental agency or garage; or

   b. pay $10 for each complete 24 hour period that *your car* is not drivable if *you* choose to not rent a *car*. *You* must report to us the period of time *your car* was not drivable.

   We will pay only if *your car* is not drivable because of a *loss* which would be payable under coverage D, F or G.

   This applies during a period starting:

   a. when *your car* cannot run due to the *loss*; or

   b. if *your car* can run, when *you* leave it at the shop for agreed repairs;

and ending:

a. when it has been repaired or replaced, or

b. (1) when we offer to pay for the *loss*, if *your car* is repairable, or

   (2) five days after we offer to pay for the *loss*, if:

   (a) *your car* was stolen and not recovered, or

   (b) we declare it a total loss,

whichever comes first.

Any car rent payable under this coverage is REDUCED TO THE EXTENT IT IS PAYABLE UNDER COMPREHENSIVE.

2. **Travel Expenses.** If *your car* cannot run due to a *loss* which would be payable under coverage D, F or G more than 50 miles from home, we will repay *you* for expenses incurred by *you, your spouse* and any *relative* for:

   a. Commercial transportation fares to continue to *your* destination or home.

   b. Extra meals and lodging needed when the *loss* to *your car* causes a delay enroute. The expenses must be incurred between the time of the *loss* and *your* arrival at *your* destination or home or by the end of the fifth day, whichever occurs first.

   c. Meals, lodging and commercial transportation fares incurred by *you* or a *person you* choose to drive *your car* from the place of repair to *your* destination or home.

3. **Rental Car – Repayment of Deductible Amount Expense.** We will repay the expense of any deductible amount *you* are required to pay the owner under comprehensive or collision coverage in effect on a substitute *car* rented from a car rental agency or garage.

**Total Amount of Expenses Payable – Coverage R1**

1. The most we will pay for the total of the **Car Rental Expense** and **Rental Car – Repayment of Deductible Amount Expense** incurred in any one occurrence is $400.

2. The most we will pay for **Travel Expenses** incurred by all persons in any one occurrence is $400.

## CAR RENTAL AND TRAVEL EXPENSES – COVERAGE R2. *You* have this coverage if "R2" appears in the "Coverages" space on the declarations page.

24

8107

1. **Car Rental Expense.**

   a. We will:

      (1) pay 80% of the rental charge when *you* rent a *car* from a car rental agency or garage. "Rental charge" means the daily rental rate plus charges for mileage and related taxes; or

      (2) pay *you* $10 for each complete 24 hour period that *your car* is not drivable if *you* choose to not rent a *car*. *You* must report to us the period of time that *your car* was not drivable.

      We will pay only if *your car* is not drivable because of a *loss* which would be payable under coverage D, F or G.

   b. Payment will be made for a period that:

      (1) starts:

         (a) when *your car* is not drivable due to the *loss;* or

         (b) if *your car* is drivable, when *you* leave it at the shop for agreed repairs; and

      (2) ends:

         (a) when *your car* has been repaired or replaced; or

         (b) when we offer to pay for the *loss*, if *your car* is repairable but *you* choose to delay repairs; or

         (c) five days after we offer to pay for the *loss* if:

            (i) *your car* was stolen and not recovered; or

            (ii) we declare that *your car* is a total loss;

      whichever comes first.

   Any car rent payable under this coverage is REDUCED TO THE EXTENT THAT PAYMENT IS MADE UNDER COMPREHENSIVE COVERAGE.

2. **Travel Expenses.** If *your car* is not drivable due to a *loss* which occurs more than 50 miles from home and which would be payable under coverage D, F or G, we will pay *you* for expenses incurred by *you*, *your spouse* and any *relative* for:

   a. commercial transportation fares to continue to *your* destination or home;

   b. extra meals and lodging needed when the *loss* to *your car* causes a delay enroute. The expenses must be incurred between the time of the *loss* and *your* arrival at *your* destination or home or by the end of the fifth day, whichever occurs first; and

   c. meals, lodging and commercial transportation fares incurred by *you* or a *person you* choose to drive *your car* from the place of repair to *your* destination or home.

3. **Rental Car – Repayment of Deductible Amount Expense.** We will pay the expense of any deductible amount *you* are required to pay the owner under comprehensive or collision coverage in effect on a substitute *car* rented from a car rental agency or garage.

**Total Amount of Expenses Payable – Coverage R2**

1. The most we will pay for **Car Rental Expense** incurred in any one occurrence is $500.

2. The most we will pay for **Travel Expenses** incurred by all *persons* in any one occurrence is $400.

3. The most we will pay for **Rental Car – Repayment of Deductible Amount Expense** incurred in any one occurrence is $400.

**Trailer Coverage**

1. **Owned Trailer**

   *Your* trailer is covered:

   a. when it is described on the declarations page of the policy; and

   b. for the coverages shown as applying to it.

2. **Non-Owned Trailer or Detachable Living Quarters**

   Any physical damage coverage in force on *your car* applies to a non-owned:

   a. trailer, if it is designed for use with a *private passenger car*, or

   b. detachable living quarters unit

   used by the first *person* named in the declarations, his or her *spouse* or their *relatives*.

   The most we will pay under the comprehensive or collision coverage for a *loss* to such non-owned trailer or unit is $500.

   A non-owned trailer or detachable living quarters unit is one that:

   a. is not owned by or registered in the name of:

25

8107

(1) *you, your spouse,* any *relative;*

(2) any other *person* residing in the same household as *you, your spouse* or any *relative;* or

(3) an employer of *you, your spouse* or any *relative;* and

b. has not been used or rented by or in the possession of *you, your spouse* or any *relative* during any part of each of the last 21 or more consecutive days. If *you* are insured by one or more other car policies issued by us, the 21 day limit is increased by an additional 21 days for each such additional policy; and

c. is not rented and used in connection with the employment or business of *you, your spouse* or any *relative.*

## Coverage for the Use of Other Cars

The coverages in this section *you* have on *your car* extend to a *loss* to a *newly acquired car*, a *temporary substitute car* or a *non-owned car*. These coverages extend to a *non-owned car* while it is driven by or in the custody of an *insured*.

*Insured* – as used in this provision means:

1. the first *person* named in the declarations;

2. his or her *spouse*; or

3. their *relatives*.

## When Coverages D, F, G, H, R, R1 and R2 Do Not Apply

THERE IS NO COVERAGE FOR:

1. A *NON-OWNED CAR*:

   a. IF THE DECLARATIONS STATE THE "USE" OF *YOUR CAR* IS OTHER THAN PLEASURE AND BUSINESS;

   b. WHILE BEING REPAIRED, SERVICED OR USED BY ANY *PERSON* WHILE THAT *PERSON* IS WORKING IN ANY *CAR BUSINESS*; OR

   c. WHILE USED IN ANY OTHER BUSINESS OR OCCUPATION. This does not apply to a *private passenger car* driven or *occupied* by the first *person* named in the declarations, his or her *spouse* or their *relatives*.

2. ANY VEHICLE WHILE:

   a. RENTED OR LEASED TO OTHERS; OR

b. USED TO CARRY *PERSONS* FOR A CHARGE. This does not apply to the use on a share expense basis; OR

3. *LOSS* TO ANY VEHICLE DUE TO:

   a. TAKING BY ANY GOVERNMENTAL AUTHORITY;

   b. WAR OF ANY KIND;

   c. AND LIMITED TO WEAR AND TEAR, FREEZING, MECHANICAL OR ELECTRICAL BREAKDOWN OR FAILURE. This does not apply when the *loss* is the result of a theft covered by this policy. Nor does it apply to emergency road service; OR

   d. CONVERSION, EMBEZZLEMENT OR SECRETION BY ANY *PERSON* WHO HAS THE VEHICLE DUE TO ANY LIEN, RENTAL OR SALES AGREEMENT.

4. TIRES unless:

   a. stolen, or damaged by fire or vandalism; or

   b. other *loss* covered by this section happens at the same time.

5. TAPES OR DISCS FOR RECORDING OR REPRODUCING SOUND.

6. ANY LASER OR RADAR DETECTOR.

7. *YOUR CAR* WHILE SUBJECT TO ANY LIEN, LEASE OR SALES AGREEMENT NOT SHOWN IN THE DECLARATIONS.

## If There Is Other Physical Damage Coverage or If You Own More Than One Vehicle

1. **Vehicles You Own**

   a. If the vehicle involved in the accident is owned by *you* or *your spouse*, this coverage applies only if it is:

      (1) *your car*; or

      (2) a *newly acquired car*. THIS INSURANCE DOES NOT APPLY IF THERE IS SIMILAR COVERAGE ON THE *NEWLY ACQUIRED CAR*.

   b. If *your car* is also described in a policy issued to *you* by another company, the total limits of liability shall not exceed those of the policy with the highest limits of liability. We are liable only for our share of the damages. Our share is the per cent that the limit of liability of the policy issued by us bears to the sum of

the limits of liability of the policies issued by us and the other company.

**2. Policies Issued by Us to You**

If two or more vehicle policies issued by us to *you* apply to the same *loss* or occurrence, we will pay under the policy with the highest limit.

**3. Temporary Substitute Car, Non-Owned Car or Trailer**

If a *temporary substitute car*, a *non-owned car* or trailer designed for use with a *private passenger car* has other coverage on it, then this coverage is excess.

**4. Coverage Available From Other Sources**

Subject to items 1, 2 and 3, if other coverage applies to the *loss* or expenses, we will pay only our share. Our share is the per cent that the limit of liability of this policy issued by us bears to the total of all coverage that applies.

**No Benefit to Bailee**

These coverages shall not benefit any carrier or other bailee for hire liable for *loss*.

**Two or More Vehicles**

If two or more of *your cars* are insured for the same coverage, the coverage applies separately to each.

## SECTION V — DEATH, DISMEMBERMENT AND LOSS OF SIGHT — COVERAGE S

If "S" is shown in the "Coverages" space on the declarations page each *insured* has the coverage.

We will pay the amount shown in the schedule that applies for death, or *loss*, caused by accident. The *insured* has to be *occupying* or be struck by a land motor vehicle or trailer. The death or *loss* must be the direct result of the accident and not due to any other cause. The death or *loss* must occur within 90 days of the accident.

*Insured* – means a *person* listed under "Persons Insured – Coverage S" on the declarations page.

*Loss* – means the loss of:

1. the foot or hand, cut off through or above the ankle or wrist; or

2. the whole thumb or finger; or

3. all sight.

**The Most We Pay**

The most we will pay because of the death of, or *loss* to, the *insured*, except as provided below, is shown under "Amount" next to his or her name on the declarations page.

The amount shown in the schedule for death or *loss* is doubled for an *insured* who, at the time of the accident, is using the vehicle's complete restraint system as recommended by the vehicle's manufacturer.

If the *insured* dies as a result of this accident, any payment made or due for *loss* reduces the amount of the death payment.

### SCHEDULE

| | If amount under S in the declarations is: | |
|---|---|---|
| | $5,000 | $10,000 |
| Death | $5,000 | $10,000 |
| *Loss* of: | | |
| hands; feet; sight of eyes; one hand & one foot; or one hand or one foot & sight of one eye | 5,000 | 10,000 |
| one hand or one foot; or sight of one eye | 2,500 | 5,000 |
| thumb & finger on one hand; or three fingers | 1,500 | 3,000 |
| any two fingers | 1,000 | 2,000 |

27

8107

**Payment of Any Amount Due**

We will pay any amount due:

1. to the *insured*;

2. to a parent or guardian if the *insured* is a minor or an incompetent *person*;

3. to the surviving *spouse*; or

4. at our option, to any *person* or organization authorized by law to receive such payment.

Any payment made is to its extent a complete discharge of our obligations. We are not responsible for the way the money is used.

**Autopsy**

We have the right to have an autopsy made where it is not forbidden by law.

**When Coverage S Does Not Apply**

THIS COVERAGE DOES NOT APPLY TO DEATH OF OR *LOSS* TO AN *INSURED*:

1. WHILE ON THE JOB, OPERATING, *OCCUPYING*, LOADING OR UNLOADING:

    a. AN EMERGENCY VEHICLE; OR

    b. A VEHICLE USED IN THE *INSURED'S* BUSINESS OR JOB.

    But 1.b. does not apply if the vehicle is:

    (1) a *private passenger car* or school bus; or

(2) of the pickup or van type, with a Gross Vehicle Weight of 10,000 pounds or less, while not used for delivery.

2. WHILE:

    a. ON THE JOB IN ANY *CAR BUSINESS*; OR

    b. *OCCUPYING* ANY:

    (1) VEHICLE WHILE BEING USED IN A RACE; OR

    (2) MILITARY VEHICLE.

3. DUE TO:

    a. DISEASE except pus forming infection due to *bodily injury* received in the accident; or

    b. SUICIDE OR ATTEMPTED SUICIDE WHILE SANE OR INSANE; OR

    c. WAR OF ANY KIND.

4. WHILE *OCCUPYING* OR THROUGH BEING STRUCK BY A MOTOR VEHICLE OR TRAILER:

    a. THAT RUNS ON RAILS OR CRAWLER-TREADS;

    b. DESIGNED FOR USE MAINLY OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS; OR

    c. LOCATED FOR USE AS PREMISES.

28

8107

# CONDITIONS

## 1. Policy Changes

**a. Policy Terms.** The terms of this policy may be changed or waived only by:

(1) an endorsement issued by us; or

(2) the revision of this policy form to give broader coverage without an extra charge. If any coverage *you* carry is changed to give broader coverage, we will give *you* the broader coverage without the issuance of a new policy as of the date we make the change effective.

**b. Change of Interest.** No change of interest in this policy is effective unless we consent in writing. However, if *you* die, we will protect as named insured, except under death, dismemberment and loss of sight coverage:

(1) *your* surviving *spouse*;

(2) any *person* with proper custody of *your car*, a *newly acquired car* or a *temporary substitute car* until a legal representative is qualified; and then

(3) the legal representative while acting within the scope of his or her duties.

Policy notice requirements are met by mailing the notice to the deceased named insured's last known address.

**c. Consent of Beneficiary.** Consent of the beneficiary under death, dismemberment and loss of sight coverage is not needed to cancel or change the policy.

**d. Joint and Individual Interests.** When there are two or more named insureds, each acts for all to cancel or change the policy.

## 2. Suit Against Us

There is no right of action against us:

a. until all the terms of this policy have been met; and

b. under the liability coverages, until the amount of damages an *insured* is legally liable to pay has been finally determined by:

(1) verdict after actual trial; or

(2) agreement between the *insured*, the claimant and us.

Bankruptcy or insolvency of the *insured* or his or her estate shall not relieve us of our obligations.

c. under no-fault, medical payments, uninsured motor vehicle, any physical damage and death, dismemberment and loss of sight coverages, until 30 days after we get the *insured's* notice of accident or *loss*.

## 3. Our Right to Recover Our Payments

a. Medical payments and death, dismemberment and loss of sight coverage payments are not recoverable by us.

b. Under uninsured motor vehicle coverage:

(1) we are subrogated to the extent of our payments to the proceeds of any settlement the injured *person* recovers from any party liable for the *bodily injury*, unless we have waived our subrogation rights according to the provision titled **Deciding Fault and Amount — Coverages U and U3.**

(2) if the *person* to or for whom we have made payment has not recovered from the party at fault, he or she shall:

(a) keep these rights in trust for us;

(b) execute any legal papers we need; and

(c) when we ask, take action through our representative to recover our payments.

We are to be repaid our payments, costs and fees of collection out of any recovery.

c. Under the liability and physical damage coverages the right of recovery of any party we pay passes to us. Such party shall:

(1) not hurt our rights to recover; and

(2) help us get our money back.

## 4. Cancellation

**How You May Cancel.** *You* may cancel *your* policy by notifying us in writing of the date to cancel, which must be later than the date *you* mail or deliver it to us. We may waive these requirements by confirming the date and time of cancellation to *you* in writing.

However, if *your* policy provides liability and no-fault coverages, *you* may not cancel *your* policy during the first two months immediately following the policy effective date unless:

a. *your car* has been totally destroyed;

b. *you* have transferred ownership of *your car*;

29

8107

a. *your car*, or its use, including annual mileage;

b. the *persons* who regularly drive *your car*, including newly licensed family members;

c. *your* marital status; or

d. the location where *your car* is principally garaged.

*You* agree that if this information or any other information used to determine the premium is incorrect or incomplete, or changes during the policy period, we may decrease or increase the premium during the policy period based upon the corrected, completed or changed information. *You* agree that if the premium is decreased or increased during the policy period, State Farm will refund or credit to *you* any decrease in premium and *you* will pay for any increase in premium.

### 7. Mediation

We or the *insured* may request mediation of any claim:

a. in an amount of $10,000 or less resulting from:

 1. *bodily injury* under Sections II or III; or

 2. death of or *loss* to an *insured* under Section V; or

b. in any amount for a *loss* covered under Section IV,

by filing a written request with the Department of Insurance on a form which may be obtained

from the department. The request must state why mediation is being requested and the issue in dispute.

The Department of Insurance will appoint a mediator. Each party may reject one mediator whether before or after the other party has made a rejection. The mediator will notify the partie of the date, time, and place of the mediation conference, which will be held within 45 days of the request for mediation. The mediation will be conducted informally and may be held by telephone if feasible. Participants must have authority to make a binding decision, and must mediate in good faith. Information and disclosure provided during mediation are not admissible in any subsequent action or proceeding relating to the claim or cause of action giving rise to the claim. Costs of the mediator shall be shared equally by each party unless the mediator determines a party has not mediated in good faith.

If a person files suit which relates to facts already mediated, such facts shall not be mediated again. Only one mediation may be requested for each claim, unless all parties agree to further mediation. Any suit regarding a mediated dispute must be filed as prescribed under the "Limitations of Actions" statutes or within 60 days after the conclusion of the mediation process, whichever is later.

### 8. Concealment or Fraud

There is no coverage under this policy if *you* or any other *person* insured under this policy has made false statements with the intent to conceal or misrepresent any material fact or circumstance in connection with any claim under this policy.

## MUTUAL CONDITIONS

1. **Membership.** While this policy is in force, the first insured named in the declarations is entitled to vote at all meetings of members and to receive dividends the Board of Directors in its discretion may declare in accordance with reasonable classifications and groupings of policyholders established by such Board.

2. **No Contingent Liability.** This policy is non-assessable.

3. **Annual Meeting.** The annual meeting of the members of the company shall be held at its home office at Bloomington, Illinois, on the second Monday of June at the hour of 10:00 A.M., unless the Board of Directors shall elect to change the time and place of such meeting, in which case, but not otherwise, due notice shall be mailed each member at the address disclosed in this policy at least 10 days prior thereto.

In Witness Whereof, the State Farm Mutual Automobile Insurance Company has caused this policy to be signed by its President and Secretary at Bloomington, Illinois, and countersigned on the declarations page by a duly authorized representative of the Company.

*Kim M. Brunner*

SECRETARY

*Vincent J. Trosino*

PRESIDENT

31
8107

c. *you* have purchased another policy covering *your car;* or

d. *you* are a member of the United States Armed Forces and have been called to or are on active duty outside the United States in an emergency situation.

**How and When We May Cancel.** We may cancel *your* policy by written notice, mailed or delivered to *your* last known address. The notice shall give the date cancellation is effective. Except as provided under **Cancellation Due to Incorrect Premium,** the notice will be mailed or delivered to *you* at least:

a. 10 days before the cancellation effective date if the cancellation is because *you* did not pay the premium; or

b. 45 days before the cancellation effective date if the cancellation is because of any other reason.

The mailing of the notice by United States postal proof of mailing or certified or registered mailing shall be sufficient proof of notice.

During the first 60 days immediately following the policy effective date, if we cancel *your* policy for nonpayment of premium, we will do so only if a check used to pay the premium is dishonored for any reason. Subject to this, on or after the 60th day that *your* policy has been in effect, we will not cancel *your* policy before the end of the current policy period unless:

a. *you* fail to pay the premium when due;

b. *you, your spouse,* any *relative* or any other *person* who usually drives *your car* has had his or her driver's license under suspension or revocation during the 180 days just before the effective date of the policy or during the policy period or, if the policy is a renewal, during its policy period.

c. the grounds for the cancellation are based on material misrepresentation or fraud.

**Cancellation Due to Incorrect Premium.** If we determine that we have charged *you* an incorrect premium for coverages requested in *your* insurance application, we will immediately notify *you* of any additional premium due. *You* may:

a. maintain *your* policy in force by paying the additional amount due by the date stated in the notice; or

b. cancel *your* policy by the date stated in the notice and receive a refund of any unearned premium.

If *you* fail to respond by the date stated in the notice, we will cancel *your* policy. The cancellation

effective date will be stated in the notice and will be at least 14 days after the date we mail or deliver the notice to *you*.

**Return of Unearned Premium.** If *you* cancel, premium will be earned on a pro-rata basis. We may retain up to ten percent of any unearned premium. Any remaining unearned premium will be returned to *you* within 30 days after we receive *your* request to cancel *your* policy. If we cancel, premium will be earned on a pro-rata basis. Any unearned premium will be returned at the time we cancel or within 30 days after we issue the cancellation notice. Delay in the return of unearned premium does not affect the cancellation.

**5. Renewal**

Unless we mail or deliver to *you* written notice of cancellation or a notice of our intention not to renew the policy, we agree to renew the policy for the next policy period upon *your* payment of the renewal premium. It is agreed that the renewal premium will be based upon the rates in effect, the coverages carried, the applicable limits of liability, deductibles and other elements that affect the premium that apply at the time of renewal.

Other elements that may affect *your* premium include, but are not limited to:

a. drivers of *your car* and their ages and marital status;

b. *your car* and its use;

c. eligibility for discounts or other premium credits;

d. applicability of a surcharge based either on accident history, or on other factors.

A notice of our intention to not renew will be mailed or delivered to *your* last known address at least 45 days before the end of the current policy period. The mailing of the notice by United States postal proof of mailing or certified or registered mailing shall be sufficient proof of notice.

**6. Premium**

The premium for this policy may vary based upon the purchase of other insurance from one of the State Farm affiliated companies.

The premium for this policy is based on information State Farm has received from *you* or other sources. If the information is incorrect or incomplete, or changes during the policy period, *you* must inform State Farm of any changes regarding the following:

30
8107

Page No.      **WHAT IT IS AND WHERE YOU CAN FIND IT — THE INDEX**

6     Reporting a Claim – Insured's Duties – What to do if *you* have an accident, claim or are sued.
3     Defined Words
4     Declarations Continued
5     When and Where Coverage Applies
5     Financed Vehicles – Coverage for Creditor

**Coverages**

7     **A – Liability** – When there is *bodily injury* to others or damage to others' property.
10    **B – Property Damage Liability** – When there is damage to others' property.
12    **P – No-Fault** – When there are medical expenses, work loss or death.
16    **C – Medical Payments** – When there are medical and funeral expenses.
18    **U – Uninsured Motor Vehicle** – When the other car or driver is not insured or is underinsured. (Underinsured coverage is on an excess basis.)
18    **U3 – Uninsured Motor Vehicle** – When the other car or driver is not insured or is underinsured. (Non-Stacking Optional Form.)
22    **D – Comprehensive** – When *your car* is damaged except by collision or upset. Any deductible amount is shown by the number beside "D" on the declarations page.
22    **F – Collision – 80%** – When *your car* is damaged by collision or upset.
23    **G – Collision** – When *your car* is damaged by collision or upset. The deductible is shown by the number beside "G" on the declarations page.
23    **H – Emergency Road Service** – When *your car* breaks down or needs a tow.
24    **R – Car Rental Expense** – When *you* need to rent a *car* because of damage to *your car*.
24    **R1 – Car Rental and Travel Expenses** – When *you* need to rent a *car* and pay extra travel expenses because of damage to *your car*.
24    **R2 – Car Rental and Travel Expenses** – When *you* need to rent a *car* and pay extra travel expenses because of damage to *your car*.
27    **S – Death, Dismemberment and Loss of Sight** – Pays for death of or certain injuries to *persons* named.

**Conditions**

29    1.   Policy Changes
29    2.   Suit Against Us
29    3.   Our Right To Recover Our Payments
29    4.   Cancellation
30    5.   Renewal
30    6.   Premium
31    7.   Mediation
31    8.   Concealment or Fraud

31    **Mutual Conditions**

Policy Form 9810.7

# 6127HH AMENDATORY ENDORSEMENT

This endorsement is a part of *your* policy. Except for the changes it makes, all other terms of the policy remain the same and apply to this endorsement. It is effective at the same time as *your* policy unless a different effective date is specified by us in writing.

In consideration of the premium charged, it is agreed that *your* policy is changed as follows:

1. **DEFINED WORDS**

   a. The definition of *Newly Acquired Car* is changed to read:

      *Newly Acquired Car* means a *car* newly owned by or newly leased to *you* or *your spouse*. A *car* ceases to be a *newly acquired car* on the earlier of:

      1. the effective date and time of a policy, including any binder, issued by *us* or any other company that describes the *car* as an insured vehicle; or

      2. the end of the 14th calendar day immediately following the date the *car* is delivered to *you* or *your spouse*.

      If *you* or *your spouse* want coverage for a *car* newly owned by or newly leased to *you* or *your spouse* after that *car* ceases to be a *newly acquired car* and it:

      1. replaces *your car*, then *you* must ask us to insure that *car* within 14 days after it is delivered to *you* or *your spouse* and pay *us* any added amount due. The added amount due will be calculated based on the date the replacement *car* is delivered to *you* or *your spouse*.

      2. does not replace *your car*, then *you* or *your spouse* must apply to *us* for a separate policy to insure that added *car*. Such policy will be issued only if both the applicant and the vehicle are eligible for coverage at the time of the application.

      If a *newly acquired car* is not otherwise afforded comprehensive coverage or collision coverage by this or any other policy, then this policy will provide Comprehensive Coverage or Collision Coverage for that *newly acquired car*, subject to a deductible of $500. Any coverage provided as a result of this paragraph will apply only until the end of the 5th calendar day immediately following the date the *newly acquired car* is delivered to *you* or *your spouse*.

   b. The definition of *Your Car* is changed to read:

      *Your Car* means the vehicle described on the Declarations Page. *Your Car* does not include a vehicle that *you* no longer own or lease.

      If *you* ask us to replace the *car* shown on the Declarations Page with a *car* newly owned by or newly leased to *you* or *your spouse*, the *car* being replaced will continue to be considered *your car* until the earliest of:

      1. the end of the 30th calendar day immediately following the date such newly owned or newly leased *car* is delivered to *you* or *your spouse*;

      2. the date this policy is no longer in force; or

      3. the date *you* no longer own or lease the *car* being replaced.

2. **REPORTING A CLAIM — INSURED'S DUTIES**

   The following is added:

   A *person* or organization making claim under this policy must give us proof of loss on forms we furnish.

   A *person* making claim under No-Fault Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, or Death, Dismemberment and Loss of Sight Coverage must provide written authorization for us to obtain:

   1. medical bills;

   2. medical records;

   3. wage, salary, and employment information; and

   4. any other information we deem necessary to substantiate the claim.

6127HH

If an injured *person* is a minor, unable to act, or dead, then his or her legal representative must provide us with the written authorization.

If the holder of the information refuses to provide it to us despite the authorization, then at our request the *person* making claim or his or her legal representative must obtain the information and promptly provide it to us.

3. **SECTION II – NO-FAULT – COVERAGE P**

The provision titled **Disputes Regarding Charges For Treatment of Injured Persons** is deleted.

4. **SECTION III — UNINSURED MOTOR VEHICLE — COVERAGES U AND U3**

The following is added to Deciding Fault and Amount – Coverages U and U3:

Arbitrators shall have no authority to decide any questions of law or conduct arbitration on a class-wide or class-representative basis.

5. **SECTION IV — PHYSICAL DAMAGE COVERAGES**

a. **COLLISION – 80% – COVERAGE F and COLLISION – COVERAGE G**

The following language is deleted:

If we offer to pay for the repair of damaged windshield glass instead of the replacement of the windshield and *you* agree to have such repair made, we will pay the full cost of repairing the windshield glass regardless of *your* deductible.

b. **COMPREHENSIVE – COVERAGE D, COLLISION – 80% – COVERAGE F and COLLISION – COVERAGE G**

The following is added:

If *you* and we agree, windshield glass will be repaired instead of replaced.

*You* agree that replacement glass need not have any insignia, logo, trademark, etching, or other marking that was on the replaced glass.

6. **MOTORCYCLE COVERAGE ENDORSEMENT and TRAILER ENDORSEMENT**

The definition of *newly acquired car* in the above item 1. replaces the definition of *newly acquired car* in both the MOTORCYCLE COVERAGE endorsement and the TRAILER ENDORSEMENT if either endorsement is a part of *your* policy. In addition, under the TRAILER ENDORSEMENT, "*car*" as found in the definition of *newly acquired car* is changed to include a trailer newly owned by or newly leased to *you* if it is of the same type as the trailer described on the declarations page.

# 6893MM AMENDMENT OF CAR RENTAL AND TRAVEL EXPENSES COVERAGES

This endorsement is a part of *your* policy. Except for the changes it makes, all other terms of the policy remain the same and apply to this endorsement. It is effective at the same time as *your* policy unless a different effective date is specified by us in writing.

In consideration of the premium charged, it is agreed that **SECTION IV — PHYSICAL DAMAGE COVERAGES** of *your* policy is changed as follows:

**CAR RENTAL AND TRAVEL EXPENSES — COVERAGE R1** and **CAR RENTAL AND TRAVEL EXPENSES — COVERAGE R2** are deleted and replaced by the following:

**CAR RENTAL AND TRAVEL EXPENSES – COVERAGE R1.** *You* have this coverage if "R1" appears in the "Coverages" space on the declarations page.

1. **Car Rental Expense.**
   a. If:
      (1) a dollar amount is shown under "Limits of Liability – Car Rental Expense, Each Day" on the declarations page, we will pay *you* the daily rental charge up to that dollar amount; or
      (2) a percentage amount is shown under "Limits of Liability – Car Rental Expense, Each Day" on the declarations page, we will pay *you* that percentage of the daily rental charge

   when *you* rent a *car* from a car rental agency or *car business*. "Daily rental charge" means the daily rental rate plus charges for mileage and related taxes.

   If *you* choose not to rent a *car*, we will pay *you* $10 for each complete 24 hour period that *your car* is not drivable. *You* must report to us the period of time that *your car* was not drivable.

   We will pay only if *your car* is not drivable because of a *loss* which would be payable under coverage D, F or G.

   b. Payment will be made for a period that:
      (1) starts:
         (a) when *your car* is not drivable due to the *loss*; or
         (b) if *your car* is drivable, when *you* leave it at the shop for agreed repairs; and
      (2) ends:
         (a) when *your car* has been repaired or replaced; or
         (b) when we offer to pay for the *loss*, if *your car* is repairable but *you* choose to delay repairs; or
         (c) five days after we offer to pay for the *loss* if:
            (i) *your car* was stolen and not recovered; or
            (ii) we declare that *your car* is a total loss;

   whichever comes first.

   If the incurred daily rental charge is payable under both Comprehensive Coverage and Car Rental and Travel Expenses Coverage, we will pay only under the one coverage where *you* collect the most.

6893MM

2. **Travel Expenses.** If *your car* is not drivable due to a *loss* which occurs more than 50 miles from home and which would be payable under coverage D, F or G, we will pay *you* for expenses incurred by *you, your spouse* and any *relative* for:

   a. commercial transportation fares to continue to *your* destination or home;

   b. extra meals and lodging needed when the *loss* to *your car* causes a delay enroute. The expenses must be incurred between the time of the *loss* and *your* arrival at *your* destination or home or by the end of the fifth day, whichever occurs first; and

   c. meals, lodging and commercial transportation fares incurred by *you* or a *person you* choose to drive *your car* from the place of repair to *your* destination or home.

3. **Rental Car – Repayment of Deductible Amount Expense.** We will pay the expense of any deductible amount *you* are required to pay the owner under comprehensive or collision coverage in effect on a substitute *car* rented from a car rental agency or *car business*.

**Total Amount of Expenses Payable – Coverage R1**

1. The most we will pay for "Car Rental Expense" incurred in any one occurrence is shown on the declarations page under "Limits of Liability – Car Rental Expense, Each Occurrence".

2. The most we will pay for "Travel Expenses" incurred by all *persons* in any one occurrence is $400.

3. The most we will pay for "Rental Car – Repayment of Deductible Amount Expense" incurred in any one occurrence is $400.

Chief Executive Officer

2

6893MM

## 6910.3 AMENDATORY ENDORSEMENT

This endorsement is a part of *your* policy. Except for the changes it makes, all other terms of the policy remain the same and apply to this endorsement. It is effective at the same time as *your* policy unless a different effective date is specified by us in writing.

In consideration of the premium charged, it is agreed that *your* policy is changed as follows:

1. **DEFINED WORDS**

   a. The following definition is added:

      *Fungi* – means any type or form of fungus or fungi and includes:

      1. mold;

      2. mildew; and

      3. any of the following that are produced or released by fungi:

         a. mycotoxins;

         b. spores;

         c. scents; or

         d. byproducts.

   b. The definition of *"Non-Owned Car"* is changed by deleting the provision that reads:

      *Non-owned car* does not include a rented *car* while it is used in connection with the *insured's* employment or business.

2. **REPORTING A CLAIM — INSURED'S DUTIES**

   a. **Other Duties Under the Physical Damage Coverages**

      Item e. is deleted.

   b. Item 4. is changed to read:

      4. **Other Duties Under No-Fault, Medical Payments, Uninsured Motor Vehicle and Death, Dismemberment and Loss of Sight Coverages**

         Any *person* who suffers a *bodily injury* which results in a MEDICAL PAYMENTS – COVERAGE C claim under this policy must notify us of the claim in writing as soon as reasonably possible after the *person's* first examination or treatment resulting from the *bodily injury*. Another *person* may give us the required notice on behalf of the injured *person*.

         Any *person* making claim:

   a. under the no-fault, medical payments, uninsured motor vehicle and death, dismemberment and loss of sight coverages shall:

      (1) give us all the details about the death, injury, treatment and other information we need to determine the amount payable.

      (2) be examined by physicians chosen and paid by us as often as we reasonably may require. A copy of the report will be sent to the *person* upon written request. The *person*, or his or her legal representative if the *person* is dead or unable to act, shall authorize us to obtain all medical reports and records.

   b. under the uninsured motor vehicle coverage shall:

      (1) report an accident to the police within 24 hours and to us within 30 days if the accident involves a land motor vehicle with an unknown owner or driver.

      (2) let us see the insured *car* the *person occupied* in the accident.

   c. under the no-fault and uninsured motor vehicle coverages shall send us at once a copy of all suit papers if the *person* sues the party liable for the accident for damages.

   d. under the no-fault and death, dismemberment and loss of sight coverages shall give us proof of claim as soon as practicable on forms we furnish.

Page 1 of 12

6910.3

c.   The following is added:

**Questioning Under Oath**

Under:

a.   Liability Coverage and Property Damage Liability Coverage, each *insured*;

b.   No-Fault Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, and Death, Dismemberment and Loss of Sight Coverage any *person* or organization making claim or seeking payment; and

c.   Physical Damage Coverages, *you* or the owner of a covered vehicle, or any other *person* or organization making claim or seeking payment;

must, at our option, submit to an examination under oath, provide a statement under oath, or do both, as reasonably often as we require. Such *person* or organization must answer questions under oath, asked by anyone we name, and sign copies of the answers. We may require each *person* or organization answering questions under oath to answer the questions with only that *person's* or organization's legal representative, our representatives, and no other *person* present.

3.   **LIABILITY — COVERAGE A and PROPERTY DAMAGE LIABILITY — COVERAGE B**

a.   **Trailer Coverage**

This provision is changed to read:

**Trailer Coverage**

The liability coverage extends to the ownership, maintenance or use, by an *insured*, of:

1.   trailers designed to be pulled by a *private passenger car* or a *utility vehicle*, except those trailers in 2.a. below.

Farm implements and farm wagons are considered trailers while pulled on public roads by a *car* we insure for liability.

These trailers are not described in the declarations and no extra premium is charged.

2.   the following trailers only if they are described on the declarations page and extra premium is paid:

a.   trailers designed to be pulled by a *private passenger car* or a *utility vehicle*:

(1)   if designed to carry *persons*; or

(2)   while used with a motor vehicle whose use is shown as "commercial" on the declarations page (trailers used only for pleasure use are covered even if not described and no extra premium paid); or

(3)   while used as premises for office, store or display purposes; or

b.   trailers not designed to be pulled by a *private passenger car* or a *utility vehicle*.

When we refer to trailer coverage, *insured* means:

1.   *you*;

2.   *your spouse*;

3.   the *relatives* of the first *person* named in the declarations;

4.   any other *person* while using *your car*, a *newly acquired car* or a *temporary substitute car*, if its use is within the scope of consent of *you* or *your spouse*; and

5.   any other *person* or organization liable for the use of a covered trailer by one of the above *insureds*.

THERE IS NO COVERAGE WHEN A TRAILER IS USED WITH A MOTOR VEHICLE THAT IS NOT COVERED UNDER THE LIABILITY COVERAGE OF THIS POLICY.

6910.3

b.  **If There Is Other Liability Coverage or If You Own More Than One Vehicle**

Item 3. is changed to read:

3.  **Temporary Substitute Car, Non-Owned Car, Trailer**

If a *temporary substitute car*, a *non-owned car* or a trailer designed for use with a *private passenger car* or *utility vehicle*:

a.  has other vehicle liability coverage on it; or

b.  is self-insured under any motor vehicle financial responsibility law, a motor carrier law or any similar law,

then this coverage is excess over such insurance or self-insurance.

4.  **LIABILITY — COVERAGE A**

a.  Under the paragraph that reads "In addition to the limits of liability, we will pay for an *insured* any costs listed below resulting from such accident":

(1)  item 3.c. is deleted.

(2)  item 4. is changed to read:

4.  The following costs and expenses if related to and incurred after a civil lawsuit has been filed against an *insured* for damages for which liability coverage is provided by this policy:

a.  loss of wages or salary, but not other income, up to $100 for each day an *insured* attends at our request:

(1)  an arbitration;

(2)  a mediation; or

(3)  a trial of a civil suit.

b.  reasonable expenses incurred by an *insured* at our request, other than loss of wages, salary, or other income.

The amount of any of the costs or expenses listed above that are incurred by an *insured* must be reported to us before we will pay.

b.  **Limits of Liability**

The first paragraph of this provision is changed to read:

The amount of bodily injury liability coverage is shown on the declarations page under "Limits of Liability – Coverage A – Bodily Injury, Each Person, Each Accident". Under "Each Person" is the amount of coverage for all damages due to *bodily injury* to one *person*. "*Bodily injury* to one *person*" includes all injury and damages to others resulting from this *bodily injury*, and all emotional distress resulting from this *bodily injury* sustained by other *persons* who do not sustain *bodily injury*. Under "Each Accident" is the total amount of coverage, subject to the amount shown under "Each Person", for all damages due to *bodily injury* to two or more *persons* in the same accident.

5.  **NO-FAULT – COVERAGE P**

a.  The first paragraph of NO-FAULT – COVERAGE P is replaced by the following:

**NO-FAULT – COVERAGE P.** *You* have this coverage if "P" with a number beside it appears in the "Coverages" space on the declarations page. "P" with a number beside it is *your* coverage symbol. Check *your* coverage symbol with the SCHEDULE under Limits of Liability for the Income Loss option *you* chose.

b.  Item 1. of **What We Pay** is changed to read:

1.  **Medical Expenses.**  80% of all reasonable expenses incurred for:

a.  *medically necessary* medical, surgical, X-ray, dental, ambulance, hospital, professional nursing and rehabilitative services, eyeglasses, hearing aids and prosthetic devices; and

b.  necessary remedial treatment and services recognized and permitted under the laws of the state for an injured *person* who relies upon spiritual means through prayer alone for healing, in accordance with his or her religious beliefs.

Page 3 of 12

6910.3

To determine whether a charge is reasonable we may consider usual and customary charges and payments accepted by the provider, reimbursement levels in the community and various federal and state medical fee schedules applicable to automobile and other insurance coverages, and other information relevant to the reasonableness of the reimbursement for the service, treatment or supply.

We will not pay any charge that the *No-Fault Act* does not require us to pay, or the amount of any charge that exceeds the amount the *No-Fault Act* allows to be charged.

c. Item 1. under the definition of *Insured* is replaced by the following:

   *Insured* – means:

   1. *you* or any *relative*:

      a. while *occupying* a *motor vehicle*; or

      b. struck as a *pedestrian* by a *motor vehicle*; or

d. The term "*medically necessary*" is added and defined as follows:

   *Medically necessary* – means a medical service or supply that a prudent physician would provide for the purpose of preventing, diagnosing, or treating an illness, injury, disease, or symptom in a manner that is:

   1. in accordance with generally accepted standards of medical practice;

   2. clinically appropriate in terms of type, frequency, extent, site, and duration; and

   3. not primarily for the convenience of the patient, physician, or other health care provider.

e. **When Payments are Reduced and Limits of Liability are replaced by the following:**

   **Application of Any Deductible and Workers' Compensation Offset and Limits of Liability**

   1. The deductible amount, if any, is shown on the declarations page beside *your* coverage symbol. The deductible amount does not

apply to death benefits. The deductible amount does apply:

   a. to *you* if "N" follows the deductible amount; or

   b. to *you* and each of *your* dependent *relatives* if "N" does not follow the deductible amount.

   Any deductible will be applied to 100% of any medical expenses, income loss, and replacement services loss eligible to be paid under this coverage. The deductible will be applied to such expenses and losses upon our receipt of reasonable proof of such loss and the amount of expenses and loss incurred.

2. After any applicable deductible has been applied, we will determine the amount payable under medical expenses, income loss, replacement services loss, and death benefits in accordance with the percentages and limits as described in **What We Pay.**

3. We will reduce the amount payable as determined in item 2. above by any workers' compensation benefits received for the same loss or expense.

4. The most we will pay for each *insured* for all medical expenses, income loss, replacement services loss, and death benefits combined as a result of any one accident is $10,000.

5. SCHEDULE

| Coverage Symbol | Income Loss Benefits Eliminated For *You* | Income Loss Benefits Eliminated For *Your* Dependent *Relatives* |
|---|---|---|
| P10 | No | No |
| P14 | Yes | Yes |
| P19 | Yes | No |

f. **If There Is Other No-Fault Coverage or If You Own More Than One Vehicle**

(1) Item a. under **Vehicles You Own** is changed to read:

   a. If the vehicle involved in the accident is owned by *you*,

Page 4 of 12

6910.3

this coverage applies only if it is:

(1) *your car*; or

(2) a *newly acquired car*. THIS COVERAGE DOES NOT APPLY IF THERE IS OTHER NO-FAULT COVERAGE ON THE *NEWLY AC-QUIRED CAR*.

(2) Item 2. is changed to read:

2. **Policies Issued by Us to You or Any Relative**

If two or more policies providing no-fault coverage issued by us to *you* or any *relative* apply to the same accident, the total limits of liability under all such policies shall not exceed that of the policy with the highest limit of liability.

g. **What Is Not Covered Under Coverage P**

Item 1.a. is changed to read:

THERE IS NO COVERAGE FOR *BODILY INJURY* TO ANY *PEDES-TRIAN* NOT A RESIDENT OF FLORIDA. This does not apply to *you* or any *relative*.

6. **MEDICAL PAYMENTS – COVERAGE C** is replaced by the following:

**MEDICAL PAYMENTS – COVERAGE C. *You*** have this coverage if "C" appears in the "Coverages" space on the declarations page.

We will pay reasonable medical expenses incurred, for *bodily injury* caused by accident, for services furnished within three years of the date of the accident. These expenses must be for:

1. *medically necessary* medical, surgical, X-ray, dental, ambulance, hospital, professional nursing and rehabilitative services, eyeglasses, hearing aids and prosthetic devices;

2. necessary remedial treatment and services recognized and permitted under the laws of the state for an injured *person* who relies upon spiritual means through prayer alone for healing, in accordance with his or her religious beliefs; and

3. funeral expenses.

To determine whether a charge is reasonable we may consider usual and customary charges and payments accepted by the provider, reimbursement levels in the community and various federal and state medical fee schedules applicable to automobile and other insurance coverages, and other information relevant to the reasonableness of the reimbursement for the services, treatment or supply.

The accident must result from the ownership, maintenance or use of a *motor vehicle*.

The *bodily injury* must be discovered and treated within one year of the date of the accident.

THERE IS NO COVERAGE UNTIL THE MEDICAL EXPENSE BENEFITS OF ALL NO-FAULT COVERAGE AVAILABLE FROM ALL SOURCES HAS BEEN EXHAUSTED. However, this does not apply to the 20% of expenses that are not paid under no-fault coverage because of the 80% limitation.

We have the right to make or obtain a utilization review of the medical expenses and services to determine if they are reasonable and *medically necessary* for the *bodily injury* sustained.

*Medically necessary* – means a medical service or supply that a prudent physician would provide for the purpose of preventing, diagnosing, or treating an illness, injury, disease, or symptom in a manner that is:

1. in accordance with generally accepted standards of medical practice;

2. clinically appropriate in terms of type, frequency, extent, site, and duration; and

3. not primarily for the convenience of the patient, physician, or other health care provider.

**Persons for Whom Medical Expenses Are Payable**

We will pay medical expenses for *bodily injury* sustained by *you* or any *relative*:

1. while *occupying* a *motor vehicle* as defined under no-fault – coverage P; or

2. through being struck as a *pedestrian* by:

Page 5 of 12

6910.3

a. a *motor vehicle* as defined under no-fault – coverage P; or

b. a motorcycle of a type required to be licensed for use on Florida highways.

*Pedestrian* means a *person* not an occupant of any self-propelled vehicle.

**Payment of Medical Expenses**

We may pay the injured *person* or any *person* or organization performing the services.

**Limit of Liability**

1. The amount of coverage for medical expenses, including funeral services, is shown on the declarations page under "Limit of Liability – Coverage C – Each Person". If the amount shown is $3,000 or more, the most we pay for funeral services is $3,000 per *person*.

2. Medical payments coverage is excess over and shall not pay any medical expenses paid or payable under any no-fault coverage, or which would otherwise be payable except for:

    a. any no-fault deductible; or

    b. the amount of workers' compensation benefits paid or payable for the same items of loss or expense.

3. The liability and uninsured motor vehicle coverages shall be excess over and shall not pay any medical expenses paid under this coverage.

**Two or More Vehicles**

1. A *motor vehicle* and attached trailer are one vehicle as respects limits.

2. When two or more *motor vehicles* are insured under this section the limits apply separately to each.

**If There Are Other Medical Payments Coverages or If You Own More Than One Vehicle**

1. **Vehicles You Own**

    a. If the vehicle involved in the accident is owned by *you* or *your spouse*, this coverage applies only if it is:

        (1) *your car*; or

        (2) a trailer described under **Trailer Coverage** for which no extra premium is charged; or

(3) a *newly acquired car*. THIS COVERAGE DOES NOT APPLY IF THERE IS OTHER VEHICLE MEDICAL PAYMENTS COVERAGE ON THE *NEWLY ACQUIRED CAR.*

    b. If *your car* is also described in a policy issued to *you* by another company, the total limits of liability shall not exceed those of the policy with the highest limits of liability. We are liable only for our share of the damages. Our share is the percent that the limit of liability of the policy issued by us bears to the sum of the limits of liability of the policies issued by us and the other company.

2. **Policies Issued by Us to You or Any Relative**

    If two or more vehicle policies providing medical payments coverage issued by us to *you* or any *relative* apply to the same accident, the total limits of liability under all such policies shall not exceed that of the policy with the highest limit of liability.

3. **Temporary Substitute Car, Non-Owned Car, Trailer or Pedestrian**

    Subject to item 2., this coverage is excess if other vehicle medical payments coverage applies to:

    a. a *temporary substitute car*, a *non-owned car* or a trailer; or

    b. *bodily injury* sustained by a *pedestrian.*

4. **Coverage Available From Other Sources**

    Subject to items 1., 2. and 3., if other vehicle medical payments coverage applies, we are liable only for our share of the damages. Our share is the percent that the limit of liability of the policy issued by us bears to the total of all vehicle medical payments coverage applicable to the accident.

**What Is Not Covered Under Coverage C**

THERE IS NO COVERAGE UNDER MEDICAL PAYMENTS:

1. FOR ANY MEDICAL EXPENSES THAT ARE NOT PAYABLE UNDER NO-FAULT COVERAGE, except for:

6910.3

a. the 20% of expenses that are not paid under no-fault coverage because of the 80% limitation;

b. expenses not paid because the medical expense benefits of all no-fault coverage available from all sources has been exhausted; and

c. expenses for *bodily injury* sustained through being struck as a *pedestrian* by:

   (1) a *motor vehicle* as defined under no-fault — coverage P while outside Florida, but within the area described under **Where Coverage Applies** for medical payments coverage; or

   (2) a motorcycle of a type required to be licensed for use on Florida highways.

2. FOR MILEAGE COSTS FOR THE USE OF A PERSONAL VEHICLE.

3. FOR ANY INTEREST CHARGES.

4. WHILE A *NON-OWNED CAR* IS USED BY ANY *PERSON* EMPLOYED OR ENGAGED IN ANY WAY IN A *CAR BUSINESS.*

5. FOR *BODILY INJURY* DUE TO WAR OF ANY KIND.

6. FOR MEDICAL EXPENSES FOR *BODILY INJURY:*

   a. SUSTAINED WHILE *OCCUPYING* OR THROUGH BEING STRUCK BY A VEHICLE OWNED BY *YOU* OR ANY *RELATIVE* WHICH IS NOT INSURED UNDER THIS COVERAGE; OR

   b. TO THE EXTENT WORKERS' COMPENSATION BENEFITS:

      (1) HAVE BEEN PAID; OR

      (2) ARE REQUIRED TO BE PAYABLE; OR

   c. SUSTAINED BY ANY *RELATIVE* WHO AT THE TIME OF THE ACCIDENT:

   (1) OWNS A MOTOR VEHICLE SUBJECT TO THE *NO-FAULT ACT;* AND

   (2) IS NOT INSURED FOR THE COVERAGE REQUIRED BY THE *NO-FAULT ACT.*

   This does not apply to *relative* while *occupying your car* if the accident occurs outside of Florida.

7. FOR *BODILY INJURY* THAT RESULTS FROM EXPOSURE TO *FUNGI.*

8. FOR *BODILY INJURY* THAT RESULTS FROM:

   a. NUCLEAR REACTION;

   b. RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR

   c. THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE.

7. **SECTION III — UNINSURED MOTOR VEHICLE — COVERAGES U AND U3**

   a. Item 1. that follows "An *uninsured motor vehicle* does not include a land motor vehicle:" is changed to read:

      1. insured under the liability coverage of this policy. However, any such vehicle will be deemed to be an *uninsured motor vehicle* for *bodily injury* sustained by *you, your spouse* or any *relative* while the vehicle is being operated by a *person* other than *you, your spouse* or any *relative;*

   b. **Limits of Liability — Coverage U**

      (1) Item 1. of this provision is changed to read:

         1. The amount of coverage is shown on the declarations page under "Limits of Liability – U – Each Person, Each Accident". Under "Each Person" is the amount of coverage for all damages due to *bodily injury* to one *person.* "*Bodily injury*" to one *person*" includes all injury and

6910.3

damages to others resulting from this *bodily injury*, and all emotional distress resulting from this *bodily injury* sustained by other *persons* who do not sustain *bodily injury*. Under "Each Accident" is the total amount of coverage, subject to the amount shown under "Each Person", for all damages due to *bodily injury* to two or more *persons* in the same accident.

(2) Item 2.b.(2) of this provision is changed to read:

(2) the no-fault coverage;

c.   **Limits of Liability – Coverage U3**

(1) The first paragraph of this provision is changed to read:

1.   The amount of coverage is shown on the declarations page under "Limits of Liability – U3 – Each Person, Each Accident". Under "Each Person" is the amount of coverage for all damages due to *bodily injury* to one *person*. *"Bodily injury* to one *person"* includes all injury and damages to others resulting from this *bodily injury*, and all emotional distress resulting from this *bodily injury* sustained by other *persons* who do not sustain *bodily injury*. Under "Each Accident" is the total amount of coverage, subject to the amount shown under "Each Person", for all damages due to *bodily injury* to two or more *persons* in the same accident.

(2) Item 2.b.(2) of this provision is change to read:

(2) the no-fault coverage;

8.   **SECTION IV — PHYSICAL DAMAGE COVERAGES**

a.   **COMPREHENSIVE – COVERAGE D**

(1) The second paragraph of item 1. is changed to read:

Breakage of glass or *loss* due to hitting or being hit by a bird or an animal is payable under this coverage.

(2) Item 2. is changed to read:

2.   We will pay *you* for transportation costs incurred if *your car* is stolen. We will pay up to $25 per day beginning when *you* tell us of the theft and ending when we offer to pay for the *loss*.

If the daily incurred transportation costs are payable under both Comprehensive Coverage and Car Rental and Travel Expenses Coverage, we will pay only under the one coverage where *you* collect the most. If payments have been made under Car Rental and Travel Expenses Coverage and such payments have either exhausted the total amount payable under Car Rental Expense or reduced the total amount payable under Car Rental Expense to less than $25, then we will pay under Comprehensive Coverage.

b.   **COLLISION – COVERAGES F and G**

The following paragraph is added:

*Loss* caused by collision does not include *loss* due to:

1.   missiles or falling objects;

2.   windstorm or hail;

3.   earthquake, water or flood;

4.   theft or larceny;

5.   malicious mischief or vandalism; or

6.   riot or civil commotion.

c.   **EMERGENCY ROAD SERVICE – COVERAGE H**

The following paragraph is added:

We will pay the fair cost *you* incur for *your car* for locksmith services, up to one hour, to open *your car* if *your* key is lost, stolen or locked inside *your car*. We will pay only the cost of labor.

d.   **CAR RENTAL EXPENSE — COVERAGE R**

The paragraph that reads:

Any car rent payable under Coverage R is REDUCED TO THE EXTENT

Page 8 of 12

6910.3

IT IS PAYABLE UNDER COMPRE-
HENSIVE.

is changed to read:

If the incurred daily rental charge is
payable under both Comprehensive
Coverage and Car Rental Expense
Coverage, we will pay only under the
one coverage where *you* collect the
most.

e.  **CAR RENTAL AND TRAVEL EX-
PENSES – COVERAGE R1**

(1) **Car Rental Expense**

The paragraph in the policy booklet
that reads:

Any car rent payable under this
coverage is REDUCED TO THE
EXTENT IT IS PAYABLE UN-
DER COMPREHENSIVE.

is changed to read:

If the incurred daily rental charge
is payable under both Compre-
hensive Coverage and Car Rental
and Travel Expenses Coverage,
we will pay only under the one
coverage where *you* collect the
most.

(2) The provision in the policy booklet ti-
tled **Total Amount of Expenses Pay-
able – Coverage R1** is changed to
read:

**Total Amount of Expenses Pay-
able – Coverage R1**

1. The most we will pay for
**Car Rental Expense** in-
curred in any one occurrence
is $400.

2. The most we will pay for
**Travel Expenses** incurred by
all *persons* in any one occur-
rence is $400.

3. The most we will pay for
**Rental Car – Repayment of
Deductible Amount Ex-
pense** incurred in any one
occurrence is $400.

f.  **Trailer Coverage**

(1) The most we will pay under compre-
hensive or collision coverage for a
covered non-owned trailer or detach-
able living quarters unit is increased to
$2500.

(2) Item 2.c. is deleted.

g. The following is added to **When Cover-
ages D, F, G, H, R, R1 and R2 Do Not
Apply:**

(1) THERE IS NO COVERAGE FOR
*LOSS* TO ANY VEHICLE DUE TO
*FUNGI*. THIS APPLIES REGARD-
LESS OF WHETHER OR NOT THE
*FUNGI* RESULT FROM A *LOSS*
THAT IS PAYABLE UNDER ANY
OF THE PHYSICAL DAMAGE
COVERAGES. WE WILL ALSO
NOT PAY FOR ANY TESTING OR
REMEDIATION OF *FUNGI*, OR
ANY ADDITIONAL COSTS RE-
QUIRED TO REPAIR ANY VEHI-
CLE THAT ARE DUE TO THE
EXISTENCE OF *FUNGI*.

(2) THERE IS NO COVERAGE FOR
*LOSS* TO ANY VEHICLE THAT
RESULTS FROM:

1. NUCLEAR REACTION;

2. RADIATION OR RADIO-
ACTIVE CONTAMINA-
TION FROM ANY
SOURCE; OR

3. THE ACCIDENTAL OR
INTENTIONAL DETONA-
TION OF, OR RELEASE OF
RADIATION FROM, ANY
NUCLEAR OR RADIOAC-
TIVE DEVICE.

h. **If There Is Other Physical Damage Cov-
erage or If You Own More Than One
Vehicle**

Item 2. is changed to read:

2. **Policies Issued by Us to You,
Your Spouse or Any Relative**

If two or more vehicle policies is-
sued by us to *you, your spouse* or
any *relative* apply to the same
*loss* or occurrence, we will pay
under the policy with the highest
limit.

9.  **CONDITIONS**.

a. The provision titled **Suit Against Us** is
changed to read:

2. **Suit Against Us**

There is no right of action against
us:

a. until all the terms of this pol-
icy have been met; and

b. under the liability coverages,
until the amount of damages

6910.3

an *insured* is legally liable to pay has been finally determined by:

(1) verdict after actual trial; or

(2) agreement between the *insured*, the claimant and us.

Bankruptcy or insolvency of the *insured* or his or her estate shall not relieve us of our obligations.

c. under uninsured motor vehicle, any physical damage and death, dismemberment and loss of sight coverages, until 30 days after we get the *insured's* notice of accident or *loss*.

d. under no-fault coverage if, within 15 days after our receipt of written notice of an intent to initiate litigation for:

(1) an overdue claim we pay the overdue claim, applicable interest, and a penalty of ten percent of the overdue amount that we pay, subject to a maximum penalty of $250; or

(2) our withdrawal of payment for future treatment not yet rendered we mail to the *person* filing the notice a written statement of our agreement to pay for such treatment in accordance with the notice and to pay a penalty of ten percent, subject to a maximum penalty of $250, when we pay for such future treatment.

Payment or our written statement of agreement to pay for future treatment not yet rendered shall be treated as being made on the date a draft, other valid instrument that is equivalent to payment, or our written statement of agreement to pay, is placed in the United States mail in a properly addressed, postpaid envelope, or if not so posted, on the date of delivery.

Such notice of intent to initiate litigation may not be sent until the claim is overdue, including any additional time we have to pay the claim pursuant to the *No-Fault Act*. The notice shall state that it is a "demand letter under s. 627.736 (11)" and shall specify:

(1) the name of the *insured* for whom benefits are being sought, including a copy of the assignment giving rights to the claimant if the claimant is not the *insured*;

(2) the claim number or policy number upon which the claim was originally submitted to us; and

(3) to the extent applicable, the name of the medical provider who rendered the treatment, services, accommodations or supplies that form the basis of the claim, and an itemized statement specifying each exact amount, the date of treatment, service, or accommodation, and the type of benefit claimed to be due. A properly completed Centers for Medicare and Medicaid Services (CMS) 1500 form, UB 92 form, any other standard form approved by the Department of Financial Services, or the lost-wage statement previously submitted, may be used as the itemized statement. To the extent that the demand involves our withdrawal of payment for future treatment not yet rendered, the claimant shall attach a copy of our notice withdrawing such payment and an itemized statement of the type, frequency, and duration of future treatment claimed to be reasonable and *medically necessary*.

Page 10 of 12

6910.3

The notice must be delivered to us by United States certified or registered mail, return receipt requested, at the address we have filed with, and that is made available by the office of the Florida Chief Financial Officer on its Internet Website.

e.   under medical payments coverage unless we receive written notice of an intent to initiate litigation and if within 15 days after our receipt of such for:

(1)   a claim we pay the claim; or

(2)   our withdrawal of payment for future treatment not yet rendered we mail to the *person* filing the notice a written statement of our agreement to pay for such treatment in accordance with the notice.

Payment... or our written statement of agreement to pay for future treatment not yet rendered shall be treated as being made on the date a draft, other valid instrument that is equivalent to payment, or our written statement of agreement to pay, is placed in the United States mail in a properly addressed, postpaid envelope, or if not so posted, on the date of delivery.

The notice shall state that it is a "demand letter for medical payments coverage" and shall specify:

(1)   the name of the *Insured* for whom benefits are being sought, including a copy of the assignment giving rights to the claimant if the claimant is not the *Insured*;

(2)   the claim number or policy number upon which the claim was originally submitted to us; and

(3)   to the extent applicable, the name of the medical provider who rendered

the treatment, services, accommodations or supplies that form the basis of the claim, and an itemized statement specifying each exact amount, the date of treatment, service, or accommodation, and the type of benefit claimed to be due. A properly completed Centers for Medicare and Medicaid Services (CMS) 1500 form, UB 92 form, or any other standard form approved by the Department of Financial Services, may be used as the itemized statement. To the extent that the demand involves our withdrawal of payment for future treatment not yet rendered, the claimant shall attach a copy of our notice withdrawing such payment and an itemized statement of the type, frequency, and duration of future treatment claimed to be reasonable and *medically necessary*.

The notice must be delivered to us by United States certified or registered mail, return receipt requested, at the address we have filed with, and that is made available by the office of the Florida Chief Financial Officer on its Internet Website.

b.   Under Our Right to Recover Our Payments:

(1)   Item a. is changed to read:

a.   Death, dismemberment and loss of sight coverage payments are not recoverable by us.

(2)   Item c. is changed to read:

c.   Under the liability, medical payments and physical damage coverages the right of recovery of any party we pay passes to us. Such party shall:

Page 11 of 12

6910.3

(1) not hurt our rights to re-
cover; and

(2) help us get our money
back.

c. **Cancellation**

**Return of Unearned Premium** is
changed to read:

**Return of Unearned Premium.** If
*you* cancel, premium will be earned
on a pro-rata basis. We may retain up
to ten percent of any unearned pre-
mium. Any remaining unearned pre-
mium will be mailed to *you* within 30
days after the effective date of the pol-
icy cancellation, or 30 days after we
receive *your* request to cancel *your*
policy, whichever is later. If we can-
cel, premium will be earned on a pro-
rata basis. Any unearned premium
will be mailed at the time we cancel or
within 15 days after the effective date
of the policy cancellation. Delay in
the return of unearned premium does
not affect the cancellation.

d. Condition 8, Concealment or Fraud, is
replaced by the following:

**8. Concealment or Fraud**

a. **Coverages Other Than No-
Fault**

There is no coverage under
this policy if *you* or any
other *person* insured under

this policy has made false
statements with the intent to
conceal or misrepresent any
material fact or circumstance
in connection with any claim
under this policy.

b. **No-Fault Coverage**

There is no coverage under
this policy for an *insured*
who has committed, by mate-
rial act or omission, any in-
surance fraud relating to the
no-fault coverage provided
by this policy, if the fraud is
admitted to in a sworn state-
ment by the *insured* or if it is
established in a court of
competent jurisdiction. Such
fraud voids all coverage for
no-fault benefits for the *in-
sured* who committed the
fraud, regardless of whether a
portion of the claim is legiti-
mate.

We are entitled to recover
from the *insured* who com-
mitted the fraud any pay-
ments we made before the
fraud was discovered. The
prevailing party is entitled to
its costs and attorney fees in
any action to enforce our
right of recovery under this
provision.

6910.3



# EXPLANATION OF REVIEW
*This is not a bill*

| CLAIM NUMBER | 59-Z880-592 | OFFICE NAME | State Farm Mutual Automobile Insurance Company Florida PIP Office |
|---|---|---|---|

| JAMES READ<br>c\o RAYMOND BIERNACKI<br>2667 Enterprise Rd<br>Orange City FL 32763 | ALL FAMILY CLINIC OF D B IN<br>PO BOX 915330<br>ORLANDO, FL 32891-5330 |
|---|---|

| DATE OF LOSS | 1/31/2008 | CLAIM HANDLER | Aleshia Strong X86802 |
|---|---|---|---|
| NAME INSURED | READ, JAMES P & CHERYL C | ADDRESS | P.O. Box 9608 Winter Haven, FL. 33883 |
| POLICY NUMBER | 808843459 | PHONE | (866) 537-2716 |
| JURISDICTION | Florida | TIN | 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 |
| ZIP OF SERVICE | 32891-5330 | | |
| BILL REFERENCE NUMBER | 18027-08030038 | DATE RECEIVED | 3/14/2008 |
| DIAGNOSIS CODES | 847.2 LUMBAR SPRAIN AND STRAIN, 782.0 DISTURBANCE OF SKIN SENSATION, 840.9 SPRAIN AND STRAIN OF UNSPECIFIED SITE OF SHOULDER AND UPPER ARM | | |

*allow    1007.*

| LINE | DATE OF SERVICE | POS | CPT/HCPCS | MOD/TS | UNITS | SUBMITTED AMOUNT | APPROVED AMOUNT | REASON CODES |
|---|---|---|---|---|---|---|---|---|
| 1 | 3/6/2008 3/6/2008 | 11 | 73221 | RT | 1 | 1,866.28 *784.30* 785.14 | *199.16* 260, 337 |
| 2 | 3/6/2008 3/6/2008 | 11 | 72148 | | 1 | 1,811.96 *1006.28* 805.38 *260.90*  337 |

| TOTAL SUBMITTED CHARGES | 3,678.24 |
|---|---|
| TOTAL APPROVED AMOUNT | 1,590.52 |
| AMOUNT NOT PAYABLE | 0.00 |
| DEDUCTIBLE | 0.00 |
| APPORTIONMENT/PRO RATA | 0.00 |
| PAID AMOUNT | 1,590.52 |

## XPLANATIONS

50 This charge has been evaluated using the bilateral procedure guidelines from Medicare (Reference PA, art B Reference Manual).

37 Effective January 1, 2007, the payment amount for the technical portion has been capped at the utpatient Prospective Payment System (OPPS) amount.

## ROCEDURE GUIDE

2148 Magnetic resonance (eg, proton) imaging, spinal canal and contents, lumbar; without contrast aterial

3221 Magnetic resonance (eg, proton) imaging, any joint of upper extremity; without contrast material(s)

ursuant to Florida Statute 627.736(6)(b), should you have any information to substantiate payment of an dditional amount for the services rendered, please forward for consideration.

ny person who knowingly and with intent to injure, defraud, or deceive any insurance company, files a tatement of claim containing false, incomplete, or misleading information is guilty of a felony of the third egree. F.S. 817.234(1)(b)

ATE :3/29/2008                                             Professional



VIA CERTIFIED MAIL # 7007-3020-0000-1395-7688
RETURN RECEIPT REQUESTED

Date: 05/08/07

State Farm Mutual Auto. Ins. Co.
Attn: Russ Kile/PIP Demand Notice Unit
P.O. Box 9619
Winter Haven, FL 33883

RE:   PIP claim under Policy #/Claim#: 59Z880592
      Our file #: 18027
      Date of Accident: 01/31/08

Dear Sir or Madam:

      This is a demand letter under s. 627.736(11) for benefits due as a result of treatment or services rendered to <u>James Read</u> by All Family Clinic of Daytona Beach, Inc., d.b.a. Florida Medical Associates, by <u>Dr. Frank Alvarez, Dr. Peter Godleski and Dr. David Jacobsen,</u> on the dates indicated on the attached itemized statement or Explanation of Benefits. At any time benefits may be re-assigned back to the patient.

| Date(s) at issue: | Code at issue: | amount at issue at 100% |
|---|---|---|
| ~~02/18/08~~ | ~~95851~~ | ~~$35.68~~ |
| ~~02/18/08~~ | ~~95851~~ | ~~$35.68~~ |
| 03/06/08 | 73221 | $199.16 |
| 03/06/08 | 72148 | $260.90 |
| 03/10/08 | 97124 | $85.20 |
| 03/12/08 | 97124 | $85.20 |
| 03/17/08 | 97124 | $85.20 |
| 03/19/08 | 97124 | $85.20 |

      You are hereby given notice that you must pay this bill without reduction, under the terms of the policy governing this claim, and F.S. 627.736 (2003), within 30 days of

1040 Mason Avenue
Daytona Beach, FL 32117
(386) 248-0107
68 of 83     fax (386) 248-0109

1051 Town Center Drive
Orange City, FL 32763
(386) 774-8444
fax (386) 774-8735

the receipt of this letter or we will file suit against you without further notice. Proper payment in response to this letter will include the full amount of the benefits, statutory interest, a 10% penalty, and the cost of this postage which is $0.28.

If you fail to pay any of the above listed charges, in full, within the time limit established by statute you will be sued without further notice. Please make checks payable to All Family Clinic of Daytona Beach, Inc.

ALSO, PLEASE PROVIDE OUR OFFICE WITH AN UPDATED PIP PAYOUT SHEET.

Sincerely,

*for Tonya Browning-Bedell, RMC*

Representative of Provider

Itemized Statement, Schedule, Assignment of Benefits and EOBs

F.S. 627.736(10)(F) " Any insurer making a general business practice of not paying valid claims until receipt of the notice required by this subsection is engaging in an unfair trade practice under the insurance code."

<u>All Family Clinic of Daytona Beach, Inc. D.B.A. Florida Medical Associates</u>
1051 Town Center Dr.
Orange City, FL 32763
Phone: (386) 774-8444  Fax: (386) 774-8735

## ASSIGNMENT, LIEN & AUTHORIZATION OF INSURANCE BENEFITS TO INSURANCE COMPANY & ATTORNEY

To Whom It May Concern:

I authorize All Family Clinic of Daytona Beach, Inc. to release any information pertinent to my case to any insurance company, adjuster, or attorney to facilitate collection under this *Assignment, Lien & Authorization*. I agree that the above mentioned office be given Power of Attorney to endorse/sign my name on any and all checks for payment of my doctor bill.

I hereby authorize and direct you, my insurance company and/or my attorney, to pay directly to All Family Clinic of Daytona Beach, Inc., such sums as may be due and owing this office for services rendered to me, both by reason of accident, of illness and by reason of any other bills that are due this office and to withhold such sums from any disability benefits, medical payment benefits, No Fault benefits, health and accident benefits, workman compensation benefits, or any other insurance benefits obligated to reimburse me or from settlement, judgment, or verdict on my behalf as may be necessary to adequately protect said Office. I hereby further give a lien to said Office against any and all insurance benefits named herein and any and all proceeds of any settlement, judgment, or verdict which may be paid to me as a result of the injuries or illness for which I have been treated by said Office. This is to act as an assignment of my rights and benefits to the extent of the Office's services provided.

In the event my insurance company, obligated to make payments to me upon the charges made by this Office for their services, refuses to make such payments upon demand by me or this Office, I hereby assign and transfer to this Office any and all causes of action that I might have or that might exist in my favor against such company and authorize this Office to prosecute said cause of action either in my name or in the Office's name and further I authorize this Office to compromise, settle, or otherwise resolve said claim or cause of action as they see fit. This instruction to you is an assignment of my rights under medical coverage to the extent of this bill. THIS INCLUDES ALL CLAIMS, BE THEY FIRST PARTY OR THIRD PARTY CLAIMS.

This document represents my Assignment of Benefits. Please be advised I am hereby placing you on notice pursuant to Florida case law that should you deny, reduce, or fail to pay either a part or this entire bill, I am requesting you reserve, or hold aside, that same amount until this dispute is resolved.

I understand that I remain personally responsible for the total amounts due the Office for their services. I further understand and agree that this Assignment, Lien, and Authorization does not constitute any consideration for the Office to await payments and they may demand payments from me immediately upon rendering services at their option.

Date: 2-11 08  Signed: _____  Our file #: 18027  Patient Name: James Read
(patient/guardian)  (printed name)

Witness: _____  Guardian Name: _____
(printed name)

Dated this 11 day of February 2008

STATE OF FL
COUNTY OF Volusia

(Notary Seal)
(Commission Expiration Date) 5/25/10

_____ (Notary Signature)

_____
Kellie Tillery (Notary Printed Name)

KELLIE DENISE TILLERY
MY COMMISSION # DD 556736
EXPIRES: May 25, 2010
Bonded Thru Notary Public Underwriters



# EXPLANATION OF REVIEW
*This is not a bill*

| CLAIM NUMBER | 59-Z880-592 | OFFICE NAME | State Farm Mutual Automobile Insurance Company Florida PIP Office |
|---|---|---|---|

JAMES READ
c\o RAYMOND BIERNACKI
2667 Enterprise Rd
Orange City FL 32763

ALL FAMILY CLINIC OF D B IN ·
PO BOX 915330
ORLANDO, FL 32891-5330

| DATE OF LOSS | 1/31/2008 | CLAIM HANDLER | Aleshia Strong X86802 |
|---|---|---|---|
| NAME INSURED | READ, JAMES P & CHERYL C | ADDRESS | P.O. Box 9608 Winter Haven, FL. 33883 |
| POLICY NUMBER | 808843459 | PHONE | (866) 537-2716 |
| JURISDICTION | Florida | TIN | 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 |
| ZIP OF SERVICE | 32891-5330 | | |
| BILL REFERENCE NUMBER | 18027-08030038 | DATE RECEIVED | 3/14/2008 |
| DIAGNOSIS CODES | 847.2 LUMBAR SPRAIN AND STRAIN, 782.0 DISTURBANCE OF SKIN SENSATION, 840.9 SPRAIN AND STRAIN OF UNSPECIFIED SITE OF SHOULDER AND UPPER ARM | | |

*allow   100%*

| LINE | DATE OF SERVICE | POS | CPT/HCPCS | MOD/TS | UNITS | SUBMITTED AMOUNT | APPROVED AMOUNT | REASON CODES |
|---|---|---|---|---|---|---|---|---|
| 1 | 3/6/2008 3/6/2008 | 11 | 73221 | RT | 1 | 1,866.28 *984.30* 785.14 | | *99.16* 260, 337 |
| 2 | 3/6/2008 3/6/2008 | 11 | 72148 | | 1 | 1,811.96 *1006.28* 805.38 | | *260.90* 337 |

| | |
|---|---|
| TOTAL SUBMITTED CHARGES | 3,678.24 |
| TOTAL APPROVED AMOUNT | 1,590.52 |
| AMOUNT NOT PAYABLE | 0.00 |
| DEDUCTIBLE | 0.00 |
| APPORTIONMENT/PRO RATA | 0.00 |
| PAID AMOUNT | 1,590.52 |

## XPLANATIONS

50 This charge has been evaluated using the bilateral procedure guidelines from Medicare (Reference PA, art B Reference Manual).

37 Effective January 1, 2007, the payment amount for the technical portion has been capped at the Outpatient Prospective Payment System (OPPS) amount.

## PROCEDURE GUIDE

2148 Magnetic resonance (eg, proton) imaging, spinal canal and contents, lumbar; without contrast naterial

3221 Magnetic resonance (eg, proton) imaging, any joint of upper extremity; without contrast material(s)

Pursuant to Florida Statute 627.736(6)(b), should you have any information to substantiate payment of an additional amount for the services rendered, please forward for consideration.

Any person who knowingly and with intent to injure, defraud, or deceive any insurance company, files a statement of claim containing false, incomplete, or misleading information is guilty of a felony of the third degree. F.S. 817.234(1)(b)

DATE :3/29/2008                                          Professional

 

# EXPLANATION OF REVIEW

*This is not a bill*

| CLAIM NUMBER | 59-Z880-592 | OFFICE NAME | State Farm Mutual Automobile Insurance Company Florida PIP Office |
|---|---|---|---|

JAMES READ
c\o RAYMOND BIERNACKI
2667 Enterprise Rd
Orange City FL 32763

ALL FAMILY CLINIC OF D B IN
PO BOX 915330
ORLANDO, FL 32891-5330

| DATE OF LOSS | 1/31/2008 | CLAIM HANDLER | Aleshia Strong X86802 |
|---|---|---|---|
| NAME INSURED | READ, JAMES P & CHERYL C | ADDRESS | P.O. Box 9608 Winter Haven, FL. 33883 |
| POLICY NUMBER | 808843459 | PHONE | (866) 537-2716 |
| JURISDICTION | Florida | TIN | 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 |
| ZIP OF SERVICE | 32891-5330 | | |
| BILL REFERENCE NUMBER | 18027-080200DL | DATE RECEIVED | 2/25/2008 |
| DIAGNOSIS CODES | 847.1 THORACIC SPRAIN AND STRAIN, 847.0 NECK SPRAIN AND STRAIN, 847.2 LUMBAR SPRAIN AND STRAIN, 840.9 SPRAIN AND STRAIN OF UNSPECIFIED SITE OF SHOULDER AND UPPER ARM | | |

| LINE | DATE OF SERVICE | POS | CPT/HCPCS | MOD/TS | UNITS | SUBMITTED AMOUNT | APPROVED AMOUNT | REASON CODES |
|---|---|---|---|---|---|---|---|---|
| 1 | 2/18/2008 2/18/2008 | 11 | 99212 | | 1 | 73.12 | 73.12 | |
| 2 | 2/18/2008 2/18/2008 | 11 | 95851 | | 1 | 66.93 | 0.00 | 11 |
| 3 | 2/18/2008 2/18/2008 | 11 | 95851 | | 1 | 66.93 | 0.00 | 11 |
| 4 | 2/18/2008 2/18/2008 | 11 | 97010 | | 1 | 32.98 | 10.00 | C736 |
| 5 | 2/18/2008 2/18/2008 | 11 | 97035 | | 1 | 37.83 | 22.44 | 305 |
| 6 | 2/18/2008 2/18/2008 | 11 | 97014 | | 1 | 33.95 | 21.88 | 305 |
| 7 | 2/18/2008 2/18/2008 | 11 | 97124 | | 2 | 97.00 | 85.20 | 305 |
| 8 | 2/18/2008 2/18/2008 | 11 | 99070 | | 1 | 9.00 | 0.00 | C719 |

| TOTAL SUBMITTED CHARGES | 417.74 |
|---|---|
| TOTAL APPROVED AMOUNT | 212.64 |
| AMOUNT NOT PAYABLE | 0.00 |
| DEDUCTIBLE | 0.00 |
| APPORTIONMENT/PRO RATA | 0.00 |

## XPLANATIONS

1 The CPT/HCPCS code(s) reported by the provider are included in another procedure reported on the bill.

05 The allowed amount for this procedure is based upon the Participating Level of Medicare Part B fee chedule for the region in which the services were rendered. (Reference: CMS Physician Fee Schedule ile)

:719 FL The CPT code submitted is a non-specific code. Please provide appropriate HCPCS code or ivoice to support the durable medical equipment, prosthetic, or orthodic supplied.

:736 The allowable amount has been calculated pursuant to Florida Statute 627.736(5) which limits eimbursement to 100% of the maximum reimbursable allowance under workers' compensation as etermined under s.440.13 for other services, supplies or care not reimbursable under the PIP fee schedule r Medicare Part B.

## ROCEDURE GUIDE

5851 Range of motion measurements and report (separate procedure); each extremity (excluding hand) or ach trunk section (spine)

7010 Application of a modality to one or more areas; hot or cold packs

7014 Application of a modality to one or more areas; electrical stimulation (unattended)

7035 Application of a modality to one or more areas; ultrasound, each 15 minutes

7124 Therapeutic procedure, one or more areas, each 15 minutes; massage, including effleurage, etrissage and/or tapotement (stroking, compression, percussion)

9070 Supplies and materials (except spectacles), provided by the physician over and above those usually icluded with the office visit or other services rendered (list drugs, trays, supplies, or materials provided)

9212 Office or other outpatient visit for the evaluation and management of an established patient, which equires at least two of these three key components: a problem focused history; a problem focused xamination; straightforward medical decision making. Counseling and/or coordination of care with other roviders or agencies are provided consistent with the nature of the problem(s) and the patient's and/or amily's needs. Usually, the presenting problem(s) are self limited or minor. Physicians typically spend 10 iinutes face-to-face with the patient and/or family.

'ursuant to Florida Statute 627.736(6)(b), should you have any information to substantiate payment of an dditional amount for the services rendered, please forward for consideration.

iny person who knowingly and with intent to injure, defraud, or deceive any insurance company, files a tatement of claim containing false, incomplete, or misleading information is guilty of a felony of the third iegree. F.S. 817.234(1)(b)

)ATE :3/11/2008                                    Professional



## EXPLANATION OF REVIEW
*This is not a bill*

36

| CLAIM NUMBER | 59-Z880-592 | | OFFICE NAME | State Farm Mutual Automobile Insurance Company Florida PIP Office |
|---|---|---|---|---|

JAMES READ
c\o RAYMOND BIERNACKI
2667 Enterprise Rd
Orange City FL 32763

ALL FAMILY CLINIC OF D B IN
PO BOX 915330
ORLANDO, FL 32891-5330

| DATE OF LOSS | 1/31/2008 | CLAIM HANDLER | Aleshia Strong X86802 |
|---|---|---|---|
| NAME INSURED | READ, JAMES P & CHERYL C | ADDRESS | P.O. Box 9608 Winter Haven, FL. 33883 |
| POLICY NUMBER | 808843459 | PHONE | (866) 537-2716 |
| JURISDICTION | Florida | TIN | 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 |
| ZIP OF SERVICE | 32891-5330 | | |
| BILL REFERENCE NUMBER | 18027-080300C3 | DATE RECEIVED | 3/18/2008 |

DIAGNOSIS CODES: 840.9 SPRAIN AND STRAIN OF UNSPECIFIED SITE OF SHOULDER AND UPPER ARM, 782.0 DISTURBANCE OF SKIN SENSATION, 847.2 LUMBAR SPRAIN AND STRAIN

| LINE | DATE OF SERVICE | POS | CPT/HCPCS | MOD/TS | UNITS | SUBMITTED AMOUNT | APPROVED AMOUNT | REASON CODES |
|---|---|---|---|---|---|---|---|---|
| 1 | 3/10/2008 3/10/2008 | 11 | 97010 | | 1 | 32.98 | 10.00 | C736 |
| 2 | 3/10/2008 3/10/2008 | 11 | 97014 | | 1 | 33.95 | 21.88 | 305 |
| 3 | 3/10/2008 3/10/2008 | 11 | 97035 | | 1 | 37.63 | 22.44 | 305 |
| 4 | 3/10/2008 3/10/2008 | 11 | 97124 | | 2 | 97.00 | 0.00 | 319 |
| 5 | 3/10/2008 3/10/2008 | 11 | 98940 | | 1 | 47.53 | 47.53 | |

| TOTAL SUBMITTED CHARGES | 249.29 |
|---|---|
| TOTAL APPROVED AMOUNT | 101.85 |
| AMOUNT NOT PAYABLE | 0.00 |
| DEDUCTIBLE | 0.00 |
| APPORTIONMENT/PRO RATA | 0.00 |
| PAID AMOUNT | 101.85 |



 

## EXPLANATION OF REVIEW
*This is not a bill*

| CLAIM NUMBER | 59-Z880-592 | | OFFICE NAME | State Farm Mutual Automobile Insurance Company, Florida PIP Office |
|---|---|---|---|---|

JAMES READ
c/o RAYMOND BIERNACKI
2667 Enterprise Rd
Orange City FL 32763

ALL FAMILY CLINIC OF D B IN
PO BOX 915330
ORLANDO, FL 32891-5330

| DATE OF LOSS | 1/31/2008 | | CLAIM HANDLER | Aleshia Strong XB6802 |
|---|---|---|---|---|
| NAME INSURED | READ, JAMES P & CHERYL C | ADDRESS | | P.O. Box 9608 Winter Haven, FL. 33883 |
| POLICY NUMBER | 808843459 | PHONE | | (866) 537-2716 |
| JURISDICTION | Florida | TIN | | 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 |
| ZIP OF SERVICE | 32891-5330 | | | |
| BILL REFERENCE NUMBER | 18027-080300DS | | DATE RECEIVED | 3/18/2008 |
| DIAGNOSIS CODES | 847.2 LUMBAR SPRAIN AND STRAIN, 847.0 NECK SPRAIN AND STRAIN | | | |

*allen line 1051.*

| LINE | DATE OF SERVICE | POS | CPT/HCPCS | MOD/TS | UNITS | SUBMITTED AMOUNT | APPROVED AMOUNT | REASON CODES |
|---|---|---|---|---|---|---|---|---|
| 1 | 3/12/2008 3/12/2008 | 11 | 98940 | | 1 | 47.53 | 47.53 | |
| 2 | 3/12/2008 3/12/2008 | 11 | 97010 | | 1 | 32.98 | 10.00 | C736 |
| 3 | 3/12/2008 3/12/2008 | 11 | 97014 | | 1 | 33.95 | 21.88 | 305 |
| 4 | 3/12/2008 3/12/2008 | 11 | 97035 | | 1 | 37.83 | 22.44 | 305 |
| 5 | 3/12/2008 3/12/2008 | 11 | 97124 | | 2 | 97.00 | *85.20* 0.00 *85.20* | 19 |

| TOTAL SUBMITTED CHARGES | | 249.29 |
|---|---|---|
| TOTAL APPROVED AMOUNT | | 101.85 |
| AMOUNT NOT PAYABLE | | 0.00 |
| DEDUCTIBLE | | 0.00 |
| APPORTIONMENT/PRO RATA | | 0.00 |
| PAID AMOUNT | | 101.85 |





# EXPLANATION OF REVIEW
*This is not a bill*

| CLAIM NUMBER | 59-Z880-592 | OFFICE NAME | State Farm Mutual Automobile Insurance Company Florida PIP Office |
|---|---|---|---|

JAMES READ
c\o RAYMOND BIERNACKI
2667 Enterprise Rd
Orange City FL 32763

ALL FAMILY CLINIC OF D B IN
PO BOX 915330
ORLANDO, FL 32891-5330

| DATE OF LOSS | 1/31/2008 | CLAIM HANDLER | Aleshia Strong X86802 |
|---|---|---|---|
| NAME INSURED | READ, JAMES P & CHERYL C | ADDRESS | P.O. Box 9608 Winter Haven, FL. 33883 |
| POLICY NUMBER | 808843459 | PHONE | (866) 537-2716 |
| JURISDICTION | Florida | TIN | 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 |
| IP OF SERVICE | 32891-5330 | | |
| BILL REFERENCE NUMBER | 18027-080300HG | DATE RECEIVED | 3/24/2008 |
| DIAGNOSIS CODES | 847.2 LUMBAR SPRAIN AND STRAIN, 847.1 THORACIC SPRAIN AND STRAIN, 847.0 NECK SPRAIN AND STRAIN | | |

| LINE | DATE OF SERVICE | POS | CPT/HCPCS | MOD/TS | UNITS | SUBMITTED AMOUNT | APPROVED AMOUNT | REASON CODES |
|---|---|---|---|---|---|---|---|---|
| 1 | 3/17/2008 3/17/2008 | 11 | 98940 | | 1 | 47.53 | 47.53 | |
| 2 | 3/17/2008 3/17/2008 | 11 | 97010 | | 1 | 32.98 | 10.00 | C736 |
| 3 | 3/17/2008 3/17/2008 | 11 | 97032 | | 1 | 41.71 | 30.74 | 305 |
| 4 | 3/17/2008 3/17/2008 | 11 | 97035 | | 1 | 37.83 | 22.44 | 305 |
| 5 | 3/17/2008 3/17/2008 | 11 | 97124 | | 2 | 97.00  *85.20* | 0.00  *85.20* | 319 |

| | |
|---|---|
| TOTAL SUBMITTED CHARGES | 257.05 |
| TOTAL APPROVED AMOUNT | 110.71 |
| AMOUNT NOT PAYABLE | 0.00 |
| DEDUCTIBLE | 0.00 |
| APPORTIONMENT/PRO RATA | 0.00 |
| PAID AMOUNT | 110.71 |

## PLANATIONS

5 The allowed amount for this procedure is based upon the Participating Level of Medicare Part B fee nedule for the region in which the services were rendered. (Reference: CMS Physician Fee Schedule e)

9 This line item has been flagged by the National Correct Coding Initiative (NCCI) Comprehensive edit tabase with a superscript of 1, which indicates that the line item will be allowed when an appropriate CI modifier is present. Please review bill to ensure that the proper procedure code and modifier were orted. (Source:http://www.cms.hhs.gov/nationalcorrectcodinited/01_overview.asp?)

36 The allowable amount has been calculated pursuant to Florida Statute 627.736(5) which limits mbursement to 100% of the maximum reimbursable allowance under workers' compensation as termined under s.440.13 for other services, supplies or care not reimbursable under the PIP fee schedule Medicare Part B.

## ROCEDURE GUIDE

010 Application of a modality to one or more areas; hot or cold packs

032 Application of a modality to one or more areas; electrical stimulation (manual), each 15 minutes

035 Application of a modality to one or more areas; ultrasound, each 15 minutes

124 Therapeutic procedure, one or more areas, each 15 minutes; massage, including effleurage, trissage and/or tapotement (stroking, compression, percussion)

940 Chiropractic manipulative treatment (CMT); spinal, one to two regions

irsuant to Florida Statute 627.736(6)(b), should you have any information to substantiate payment of an ditional amount for the services rendered, please forward for consideration.

ny person who knowingly and with intent to injure, defraud, or deceive any insurance company, files a atement of claim containing false, incomplete, or misleading information is guilty of a felony of the third gree. F.S. 817.234(1)(b)

ATE :4/1/2008                                    Professional



# EXPLANATION OF REVIEW
*This is not a bill*

| CLAIM NUMBER | 59-Z880-592 | OFFICE NAME | State Farm Mutual Automobile Insurance Company Florida PIP Office |
|---|---|---|---|

JAMES READ
c\o RAYMOND BIERNACKI
2667 Enterprise Rd
Orange City FL 32763

ALL FAMILY CLINIC OF D B IN
PO BOX 915330
ORLANDO, FL 32891-5330

| DATE OF LOSS | 1/31/2008 | CLAIM HANDLER | Aleshia Strong X86802 |
|---|---|---|---|
| NAME INSURED | READ, JAMES P & CHERYL C | ADDRESS | P.O. Box 9608 Winter Haven, FL. 33883 |
| POLICY NUMBER | 808843459 | PHONE | (866) 537-2716 |
| JURISDICTION | Florida | TIN | 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 |
| TYPE OF SERVICE | 32891-5330 | | |
| BILL REFERENCE NUMBER | 18027-080300JN | DATE RECEIVED | 3/24/2008 |
| DIAGNOSIS CODES | 847.2 LUMBAR SPRAIN AND STRAIN, 847.1 THORACIC SPRAIN AND STRAIN, 726.10 UNSPECIFIED DISORDERS OF BURSAE AND TENDONS IN SHOULDER REGION, 782.0 DISTURBANCE OF SKIN SENSATION, 847.0 NECK SPRAIN AND STRAIN | | |

| LINE | DATE OF SERVICE | POS | CPT/HCPCS | MOD/TS | UNITS | SUBMITTED AMOUNT | APPROVED AMOUNT | REASON CODES |
|---|---|---|---|---|---|---|---|---|
| 1 | 3/19/2008 3/19/2008 | 11 | 97010 | | 1 | 32.98 | 10.00 | C736 |
| 2 | 3/19/2008 3/19/2008 | 11 | 97032 | | 1 | 41.71 | 30.74 | 305 |
| 3 | 3/19/2008 3/19/2008 | 11 | 97124 | | 2 | 97.00 | 0.00 *85.20* | 319 *85.20* |
| 4 | 3/19/2008 3/19/2008 | 11 | 98940 | | 1 | 47.53 | 47.53 | |
| 5 | 3/19/2008 3/19/2008 | 11 | 97035 | | 1 | 37.83 | 22.44 | 305 |

| | |
|---|---|
| TOTAL SUBMITTED CHARGES | 257.05 |
| TOTAL APPROVED AMOUNT | 110.71 |
| AMOUNT NOT PAYABLE | 0.00 |
| DEDUCTIBLE | 0.00 |
| APPORTIONMENT/PRO RATA | 0.00 |
| PAID AMOUNT | 110.71 |

ANATIONS
The allowed amount for this procedure is based upon the Participating Level of Medicare Part B fee
edule for the region in which the services were rendered. (Reference: CMS Physician Fee Schedule
.)
 This line item has been flagged by the National Correct Coding Initiative (NCCI) Comprehensive edit
abase with a superscript of 1, which indicates that the line item will be allowed when an appropriate
CI modifier is present. Please review bill to ensure that the proper procedure code and modifier were
orted. (Source:http://www.cms.hhs.gov/nationalcorrectcodinited/01_overview.asp?)
36 The allowable amount has been calculated pursuant to Florida Statute 627.736(5) which limits
mbursement to 100% of the maximum reimbursable allowance under workers' compensation as
:ermined under s.440.13 for other services, supplies or care not reimbursable under the PIP fee schedule
Medicare Part B.

ROCEDURE GUIDE
010 Application of a modality to one or more areas; hot or cold packs
032 Application of a modality to one or more areas; electrical stimulation (manual), each 15 minutes
035 Application of a modality to one or more areas; ultrasound, each 15 minutes
124 Therapeutic procedure, one or more areas, each 15 minutes; massage, including effleurage,
trissage and/or tapotement (stroking, compression, percussion)
940 Chiropractic manipulative treatment (CMT); spinal, one to two regions

ursuant to Florida Statute 627.736(6)(b), should you have any information to substantiate payment of an
dditional amount for the services rendered, please forward for consideration.

ny person who knowingly and with intent to injure, defraud, or deceive any insurance company, files a
atement of claim containing false, incomplete, or misleading information is guilty of a felony of the third
egree. F.S. 817.234(1)(b)

Professional

ATE :4/1/2008

**State Farm®**
Providing Insurance and Financial Services
Home Office, Bloomington, Illinois 61710



*RECEIVED JUN 0 6 2008*

June 4, 2008

FLORIDA MEDICAL ASSOCIATES
d/b/a: ALL FAMILY CLINIC OF D B
1040 MASON AVE
DAYTONA BEACH, FL. 32117

**Florida PIP Office**
P.O. BOX 9608
WINTER HAVEN, FL 33883-9608

RE:   Claim Number:        59-Z880-592
      Date of Loss:         1/31/2008
      Our Insured:          CHERYL C. READ
      Patient's Name:       JAMES READ
      Patient Acct #:       18027

To whom it may concern:

Please allow this letter to confirm receipt of your correspondence for the above captioned
accident and the treatment provided James Read between dates of service (DOS) 2/18/08 –
3/19/08 in your facility.

Please be advised these DOS were submitted previously and payment issued in accordance to
the new Florida No-Fault Statute. The payments were made at 100% of the reviewed approved
amount as the insured carried PIP and MPC on their policy. Copies of our Explanation of
Review (EOR) are enclosed for your review of these payments.

For CPT code 95851 on DOS 2/18/08 that code is included in another procedure on the bill.
The MRI's on 3/6/08 were properly paid in accordance to the Florida No-Fault Statute as
outlined on the EOR. For CPT code 97124 on DOS 3/6/08 – 3/19/08, this code was reviewed
and no payment issued as the code was billed incorrectly as it was not billed with the
appropriate modifier. In order to consider CPT 97124 for those DOS you will need to re-file
those bills using the appropriate modifier as noted on the EOR. Please discuss with your
coding expert for the correct modifier and re-submit for review.

Florida Statute 627.736(5) (a) 5 outlines that if an insurer limits payment as authorized by
subparagraph 2, the person providing such services, supplies or care may not bill or attempt to
collect from the insured any amount in excess of such limits, except for the amounts that are not
covered by the insured's personal injury protection coverage due to coinsure amount or
maximum policy limits.

Since we have paid the allowable amount required by statute, we are unable to consider the
additional charges submitted for the above referenced DOS. By copy of this letter, we are also
informing the insured of their limited responsibility for any balance due.

We kindly request that the provider update their system to reflect only the amount owed due to
the coinsurance provision or exhaustion of benefits, for this DOS.

59-Z880-592
Page 2
June 4, 2008

Should you disagree with the above, or if you have further questions, please do not hesitate to contact me.

Sincerely,

Tommy Gambrell X81654
Claim Representative
(866) 537-2716

State Farm Mutual Automobile Insurance Company

Enclosure:      EOR: DOS 2/18/08; 3/6/08; 3/10/08; 3/12/08; 3/17/08 & 3/19/08

cc:      James Read
         C/O Raymond Biernacki
         2667 Enterprise Rd
         Orange City, FL. 32763

℀JS 44   (Rev. 2/08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)   **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| All Family Clinic of Daytona Beach, Inc., d/b/a Florida Medical Associates | State Farm Mutual Automobile Insurance Company |

**(b)** County of Residence of First Listed Plaintiff   Volusia
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Foreign
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

**(c)**  Attorney's (Firm Name, Address, and Telephone Number)

Lee & Amtzis, P.L.          Tel: 561-981-9988
5550 Glades Road, Suite 401
Boca Raton, FL 33431

Attorneys (If Known)

**(d)** Check County Where Action Arose:  ❏ MIAMI- DADE  ❏ MONROE  ☒ BROWARD  ❏ PALM BEACH  ❏ MARTIN  ❏ ST. LUCIE  ❏ INDIAN RIVER  ❏ OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

❏ 1  U.S. Government Plaintiff

❏ 3  Federal Question (U.S. Government Not a Party)

☑ 4  Diversity (Indicate Citizenship of Parties in Item III)

❏ 2  U.S. Government Defendant

*0:09cv 60902 -UU-*

*Simonton*

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❏ 1 | ❏ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated and Principal Place of Business In Another State | ❏ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance<br>❏ 120 Marine<br>❏ 130 Miller Act<br>❏ 140 Negotiable Instrument<br>❏ 150 Recovery of Overpayment & Enforcement of Judgment<br>❏ 151 Medicare Act<br>❏ 152 Recovery of Defaulted Student Loans (Excl. Veterans)<br>❏ 153 Recovery of Overpayment of Veteran's Benefits<br>❏ 160 Stockholders' Suits<br>❏ 190 Other Contract<br>❏ 195 Contract Product Liability<br>❏ 196 Franchise | **PERSONAL INJURY**<br>❏ 310 Airplane<br>❏ 315 Airplane Product Liability<br>❏ 320 Assault, Libel & Slander<br>❏ 330 Federal Employers' Liability<br>❏ 340 Marine<br>❏ 345 Marine Product Liability<br>❏ 350 Motor Vehicle<br>❏ 355 Motor Vehicle Product Liability<br>❏ 360 Other Personal Injury | **PERSONAL INJURY**<br>❏ 362 Personal Injury - Med. Malpractice<br>❏ 365 Personal Injury - Product Liability<br>❏ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>❏ 370 Other Fraud<br>❏ 371 Truth in Lending<br>❏ 380 Other Personal Property Damage<br>❏ 385 Property Damage Product Liability | ❏ 610 Agriculture<br>❏ 620 Other Food & Drug<br>❏ 625 Drug Related Seizure of Property 21 USC 881<br>❏ 630 Liquor Laws<br>❏ 640 R.R. & Truck<br>❏ 650 Airline Regs.<br>❏ 660 Occupational Safety/Health<br>❏ 690 Other<br>**LABOR**<br>❏ 710 Fair Labor Standards Act<br>❏ 720 Labor/Mgmt. Relations<br>❏ 730 Labor/Mgmt.Reporting & Disclosure Act<br>❏ 740 Railway Labor Act | ❏ 422 Appeal 28 USC 158<br>❏ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>❏ 820 Copyrights<br>❏ 830 Patent<br>❏ 840 Trademark<br>**SOCIAL SECURITY**<br>❏ 861 HIA (1395ff)<br>❏ 862 Black Lung (923)<br>❏ 863 DIWC/DIWW (405(g))<br>❏ 864 SSID Title XVI<br>❏ 865 RSI (405(g)) | ❏ 400 State Reapportionment<br>❏ 410 Antitrust<br>❏ 430 Banks and Banking<br>❏ 450 Commerce<br>❏ 460 Deportation<br>❏ 470 Racketeer Influenced and Corrupt Organizations<br>❏ 480 Consumer Credit<br>❏ 490 Cable/Sat TV<br>❏ 810 Selective Service<br>❏ 850 Securities/Commodities/ Exchange<br>❏ 875 Customer Challenge 12 USC 3410<br>❏ 890 Other Statutory Actions<br>❏ 891 Agricultural Acts<br>❏ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **FEDERAL TAX SUITS** | | ❏ 893 Environmental Matters |
| ❏ 210 Land Condemnation<br>❏ 220 Foreclosure<br>❏ 230 Rent Lease & Ejectment<br>❏ 240 Torts to Land<br>❏ 245 Tort Product Liability<br>❏ 290 All Other Real Property | ❏ 441 Voting<br>❏ 442 Employment<br>❏ 443 Housing/ Accommodations<br>❏ 444 Welfare<br>❏ 445 Amer. w/Disabilities - Employment<br>❏ 446 Amer. w/Disabilities - Other<br>❏ 440 Other Civil Rights | ❏ 510 Motions to Vacate Sentence<br>**Habeas Corpus:**<br>❏ 530 General<br>❏ 535 Death Penalty<br>❏ 540 Mandamus & Other<br>❏ 550 Civil Rights<br>❏ 555 Prison Condition | ❏ 790 Other Labor Litigation<br>❏ 791 Empl. Ret. Inc. Security Act | ❏ 870 Taxes (U.S. Plaintiff or Defendant)<br>❏ 871 IRS—Third Party 26 USC 7609 | ❏ 894 Energy Allocation Act<br>❏ 895 Freedom of Information Act<br>❏ 900 Appeal of Fee Determination Under Equal Access to Justice<br>❏ 950 Constitutionality of State Statutes |
| | | **IMMIGRATION**<br>❏ 462 Naturalization Application<br>❏ 463 Habeas Corpus-Alien Detainee<br>❏ 465 Other Immigration Actions | | | |

## V. ORIGIN   (Place an "X" in One Box Only)

☑ 1 Original Proceeding  ❏ 2 Removed from State Court  ❏ 3 Re-filed- (see VI below)  ❏ 4 Reinstated or Reopened  ❏ 5 Transferred from another district (specify)  ❏ 6 Multidistrict Litigation  ❏ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).

(See instructions second page):

a) Re-filed Case ❏ YES ☑ NO          b) Related Cases ❏ YES ☑ NO

JUDGE                          DOCKET NUMBER

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

28 U.S.C. 1332 - Breach of Contract

LENGTH OF TRIAL via  4  days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

☑ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $   5,000,000.00

CHECK YES only if demanded in complaint:

JURY DEMAND:   ❏ Yes  ☒ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE   6/15/09